The stipulation was dependent upon the plaintiff's success, and yet the defendant's efforts upon the trial were to prevent that success. The defendant could not well have refrained from giving proof of his counterclaims in reliance upon his own want of success in defeating the plaintiff.    If he were mistaken as to the effect of the stipulation, or for any reason justified in treating it as unconditional, his remedy was to apply for a rehearing.    But he certainly was not, upon the plaintiff's failure, entitled, without proof, to a judgment of any kind upon these counterclaims.

---

(43 App. Div. 74.)

WASHINGTON SAV. BANK OF WASHINGTON, D. C., v. FERGUSON.

(Supreme Court, Appellate Division, First Department.   July 18, 1899.)

BILLS AND NOTES—EVIDENCE—INDORSER'S CONTRACT.
   In an action against defendant as indorser of a note, he cannot show that the indorsement was qualified by a parol agreement that defendant should only be liable for the balance after certain collaterals had been applied, and after all remedies against the maker had been exhausted.

Appeal from trial term, New York county.

Action by the Washington Savings Bank of Washington, D. C., against George O. Ferguson.    There was judgment for plaintiff, and defendant appeals.    Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and INGRAHAM, JJ.

Russell & Winslow, for appellant.
Louis F. Doyle, for respondent.

BARRETT, J.    The question here is purely one of law.    These are the undisputed facts:   The defendant is the last indorser of two promissory notes which were discounted by the plaintiff.    These notes were made by the Arkell Publishing Company to its own order, and were indorsed by it, and also by W. J. Arkell and James Arkell. The defendant's indorsement then followed.    When these notes were discounted the defendant was the vice president of the plaintiff bank, and he was present at a meeting of its executive committee at which a resolution was passed in these words:

"The meeting having been called to consider two notes, of $5,000 each, made by the Arkell Publishing Company of New York, offered for discount by Mr. George O. Ferguson, on motion of George W. Cissel the committee decided unanimously to grant the loan."

Thereupon the notes were discounted, and their proceeds, less the usual interest for the unmatured period, credited to the defendant's account.    The defendant drew against these proceeds two checks,— one for $3,800 and one for $5,145.    The former was drawn to the plaintiff's order, and was given to it in payment of its draft on New York for a like amount, payable to the defendant's order.    This draft the defendant indorsed in blank, and gave it to the Arkell Company. The other check was drawn in the same way, and was given to the plaintiff in part payment of a debt due to it by the defendant.    What was left of the proceeds of the two notes was also utilized by the de-

fendant for his own purposes. He testified, in substance, that he was permitted by the Arkell Company to so utilize this balance because that company owed him a larger amount for his commissions earned in placing its bonds. It will thus be perceived that the notes in question were discounted for the defendant, and their proceeds credited to, and fully utilized by, him. These facts certainly justified the direction. The defendant, however, claimed that the notes were discounted for the Arkell Company, and that his mere agency in the matter was known to the plaintiff. In his answer he alleges that at the request of the plaintiff he indorsed the notes for the accommodation of the Arkell Company, and that they were thereupon duly delivered to the plaintiff by said Arkell Company for value. It is not contended that this allegation of itself states a defense. If the plaintiff discounted the notes for value, upon the faith of the defendant's accommodation indorsement, he is, of course, clearly liable. The real defense is stated in the paragraph which follows. It is there averred that, at the time when the defendant so indorsed these notes, it was, in consideration of such indorsement, agreed between him and the plaintiff that in the event of default in payment the latter should look in the first instance to certain collaterals, and then to the personal liability of the Arkell Company, and that the defendant should be liable on his indorsement for whatever balance might remain unpaid after the sale of the collaterals, and the exhaustion of legal remedies against the Arkell Company.

The question is, do the facts thus alleged constitute a defense? A number of questions tending to prove these facts were put to the defendant upon the trial, and were ruled out. If the facts thus averred and sought to be established constituted a defense, these rulings were erroneous. They were made before the defendant testified to the resolution of the plaintiff's executive committee, the discount of the notes for him, and the crediting of their proceeds to him. It may be that, even if the rulings in question were erroneous, this subsequent testimony annihilated the entire defense. But there might be a possible question on that head, in view of the defendant's insistence that the plaintiff was throughout aware of his agency, and that the resolution, discount, indorsement, and crediting of proceeds were all understood to be merely forms resorted to for convenience. We need not consider the question thus suggested, as we have no doubt that the defense pleaded was inherently bad, and consequently that the rulings excepted to were entirely correct. The defendant's accommodation indorsement was a written contract, to which the law has given a definite character. By that indorsement the defendant engaged that, if the note was not paid at maturity, he would, upon proper notice of dishonor, indemnify the holder. He now pleads that this written engagement was not the real engagement, that he was not to be liable according to the tenor of his indorsement, and that he was only to be liable for any balance which might remain unpaid upon the note after the application of the collaterals and the exhaustion of legal remedies against the maker. Thus, he distinctly seeks to vary or qualify his written obligation. Parol evidence tending in this direction is as clearly inadmissible in the case of a con-

tract of indorsement, accommodation, or otherwise, as in the case of any other written agreement.   Brown v. Wiley, 30 How. 442; Specht v. Howard, 16 Wall. 564; Insurance Co. v. Homer, 9 Metc. (Mass.) 39; Hoare v. Graham, 3 Camp. 57; Free v. Hawkins, 8 Taunt. 92; Abrey v. Crux, L. R. 5 C. P. 37.   This last case is almost directly in point.   There the plea attempted to set up a contemporaneous agreement between the acceptor of the bill and the payee and drawer that the acceptor should deposit securities with the plaintiff (payee), and that the latter should apply them upon the bill before seeking to hold the defendant (drawer) liable upon it.   It was held that proof in support of this plea was inadmissible.   Bovill, C. J., said:

"The contract entered into by the defendant was a contract in writing by his signature to the bill as drawer, which imports a liability on the defendant to pay the amount on default, and notice to the defendant of such default. That which the plea attempts to set up is that the defendant, at the time he signed the bill as drawer, entered into a contract under which the payment was to be made at a different time and in a different manner from that which the bill imports,—an agreement, in short, which contradicts the written contract, and oral evidence of which is inadmissible, according to the authority of numerous decisions."

Brett, J., added these observations:

"I agree that the evidence was not admissible, because it did not impeach the consideration for the bill, or show that it had failed, or set up any agreement to suspend the commencement of the defendant's liability. * * * The fact of security being given, or of the plaintiff's failure to realize the security, does not alter or impeach the consideration. The parol agreement does not postpone the liability of the defendant as drawer of the bill, but limits his liability as defined by the bill."

The defendant, however, seeks to bring his defense within that class of cases where it is held that, as the delivery and consideration of a note are always open to impeachment, the effect of the delivery and the extent of its operation may be limited by the conditions on which the delivery was made.   Benton v. Martin, 52 N. Y. 570.   It is undoubtedly true that the annexing of conditions to the delivery of a note is not an oral contradiction of the written obligation.   But the learned counsel for the defendant misconceives what was actually decided in Higgins v. Ridgway, 153 N. Y. 130, 47 N. E. 32; Seymour v. Cowing, 4 Abb. Dec. 200; Bookstaver v. Jayne, 60 N. Y. 146; and Bank v. Colwell, 57 Hun, 169, 10 N. Y. Supp. 824.   In each of the cases first and last cited the defendant was not even, in any just sense, an accommodation maker.   He signed the paper, not for the accommodation of the persons applying for the discount, not to give them additional credit, but for the mere convenience of the banker who made it.   In the Higgins Case the note was made by the defendant Ridgway, payable to his own order, and indorsed by him.   It was so made and indorsed at the request of the president of the bank, who assured Ridgway that he thereby took no risk, assumed no obligation, and that he would not be held upon the note.   There was an entire want of consideration or benefit, and the bank took the note simply for its own accommodation, and to serve, as Martin, J., said, "some particular purpose" of its own.   The note there had no vitality as between the bank and Ridgway.   The delivery was purely formal.

That formality there indicated the condition attending its delivery, and that condition, coupled with an entire want of consideration, constituted a perfect defense. The facts were in some respects the same in Bank v. Colwell, supra. There the "particular purpose" of the bank was disclosed by the cashier, who testified that the defendant signed the note simply "to make it in bankable form." In other words, the bank, desiring to discount a note for Hepworth & Co., and requiring two signatures, arranged to take one of Hepworth & Co.'s employés for the second signature. There was no consideration for this signature, and the exclusive credit was given to Hepworth & Co. The employé's signature was purely formal. It was not given for the accommodation of Hepworth & Co., but really for the convenience of the bank, and to accommodate it in the execution of its particular purpose. It is apparent that there is nothing in these cases which militates against the general rule to which we have previously referred. In all the other cases cited the real question was as to the consideration. In none of them was it held that parol evidence could be given of a condition affecting the tenor of the contract obligation. Conditions relating to the delivery of the note may be shown, but not conditions affecting the character of the delivered obligation. The one goes to the existence and vitality of the contract. The other, conceding its existence and vitality, would annex a parol condition thereto, varying its contract essence. Here the defendant admits the delivery of the note, and that it was so delivered for value. It is immaterial, under the circumstances, whether that value went to him or to the Arkell Company. When the note was so delivered for value, it had upon it the defendant's indorsement, given for the accommodation of the Arkell Company. He even admits that that accommodation indorsement imported a qualified liability. The case is thus clearly reduced to an attempt by parol to vary and minimize the contract obligation. It is clear that it must fail. There is no merit whatever in either of the alleged counterclaims, and no point is made with regard to them which calls for special consideration.

The judgment and order appealed from should therefore be affirmed, with costs. All concur.