[No. 12184. Department Two. December 30, 1914.]

F. D. METZGER, *Respondent*, v. A. SIGALL *et al.*, *Appellants.*[1]

BILLS AND NOTES—EXECUTION—EVIDENCE—SUFFICIENCY. The evidence is sufficient to establish that defendants signed certain notes, where they admitted the genuineness of their signatures, and the notes were filled out from standard printed forms in common use, with no evidence of irregularities, and the defendants were professional and business men of experience.

SAME—WANT OF CONSIDERATION—ACCOMMODATION MAKERS—BONA FIDE PURCHASERS. The fact that makers of notes received no consideration, does not affect their liability, as they would be accommodation makers, under Rem. & Bal. Code, § 3420.

SAME—HOLDER FOR VALUE. The payee of a note accepting the same as evidence of an actual loan of money made for her by an indorser, who guaranteed payment, is a holder for value as against accommodation makers claiming no consideration.

SAME—TRANSFER—ASSIGNMENT FOR COLLECTION. A holder for value may transfer title to notes by assignment for the purposes of collection.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered November 18, 1913, upon findings in favor of the plaintiffs, in consolidated actions upon promissory notes, tried to the court. Affirmed.

*Jas. J. Anderson*, for appellants.

*Hayden & Langhorne*, for respondent.

FULLERTON, J.—Sometime prior to the year 1909, one Mary E. Theisz, a resident of the state of Oregon, advanced to E. D. Wilcox, a resident of this state, certain moneys to

[1]Reported in 145 Pac. 72.

be loaned on real estate security. A loan of $1,500 was made to a person by the name of Huston, who subsequently paid to Wilcox $500 on the principal of the loan and $120 interest. Wilcox then informed Mrs. Theisz that he had an opportunity to make another real estate loan for $1,000 and would make the loan for her if she would forward him money enough to make up the difference between the money he had on hand and the amount required to complete the loan. She forwarded him the difference, whereupon he informed her that the opportunity to make the anticipated loan was gone, but that he could loan the money, if she wished him to do so, upon unsecured notes. She assented to the latter proposition, and shortly thereafter he forwarded her two notes, the one for $600 dated Nov. 25, 1909, due one year from date, signed by A. Sigall as maker, and the other for $400, dated January 28, 1910, due on November 25, 1910, signed by Wesley Lloyd as maker. On each of the notes, Wilcox placed his own endorsement, guaranteeing the payment of the note at maturity. Later on, Mr. Wilcox reported a collection on account of the first note of $24, and on the second note of $16, which sums were credited on the respective notes by Mrs. Theisz under the dates of June 2, 1910, and July 28, 1910. The notes were not paid at maturity, and later on Mrs. Theisz assigned them to the respondent in this action for collection.

On August 22, 1913, the assignee of the notes began separate actions in the superior court of Pierce county against the makers of the notes, and Wilcox as guarantor, to enforce collection of the same. Wilcox made default in each of the actions, although personally served with summons. Sigall answered the complaint, denying the execution of the note, and alleging affirmatively, that if the note was in fact signed by him, his signature was procured by Wilcox while acting as the agent of the appellant, by misrepresentation and deception, and without knowledge on his part of the nature and character of the instrument, and without any consideration passing to him for signing the same. Lloyd's answer was of

similar purport.  Replies were filed, denying the affirmative matter set forth in the answers, after which the actions were consolidated for trial, and were heard by the court sitting without a jury.  Judgment went in favor of the plaintiff, and the makers of the notes appeal.

At the trial, the genuineness of the signatures to the notes was admitted by the defendants.  Each testified, however, that he had no recollection of the circumstances surrounding the execution of the notes, or knowledge of the manner by which his signature thereto was obtained, but each was confident that he did not sign it with knowledge of the character of the instrument, and that he had received no consideration for its execution.

But notwithstanding the somewhat positive character of this testimony, we are inclined to the opinion that the court's judgment was right on the facts.  There was no attempt to prove the allegations in the answers to the effect that the signatures were procured by misrepresentation or deception, further than misrepresentation and deception can be inferred from the testimony recited.  The instruments are, in themselves, strong witnesses against the appellants' claim that they signed them without knowledge of their character.  The notes were filled out from standard printed forms in common use generally throughout the state.  The printed matter is in black ink upon a green colored background, making them unusually conspicuous.  There were three parallel lines for signatures on each of the notes, all upon the green background.  The signatures are upon the upper line, the one closest to the printed matter.  One of the notes was filled out with a typewriter and the other with a pen, and neither bear any evidences of irregularities such as are usually found in instruments instigated in fraud.  In the light of these circumstances, it would seem almost unbelievable that the most unsophisticated person could have been deceived.  And yet the makers of these notes were men of ripe and mature experience.  One of them was a lawyer, having a practice ex-

tending over a period of years, and the other a successful business man in the prime of life. The chance that either of them could be induced to sign any form of obligation without knowledge of its character is exceedingly remote, and that they could be induced to sign a promissory note of the character of the notes shown in evidence without such knowledge is more so. At any rate, the proofs that they were deceived must be cogent and convincing, and there is no such proof in the record before us.

The testimony of the appellants to the effect that they received no consideration for the execution of the notes, is not, if taken as true, fatal to the validity of the notes. They could be accommodation makers. By § 29, Laws 1899, p. 346 of the negotiable instruments act (Rem. & Bal. Code, § 3420), an accommodation maker is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person; and every such a person is declared by the same section to be liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation maker. By § 26 (Id., § 3417), it is provided that, where value has at any time been given for the instrument the holder is deemed a holder for value in respect to all parties who become such prior to that time. We think, therefore, notwithstanding the appellants' contentions to the contrary, the evidence shows that Mrs. Theisz was a holder of these notes for value. She accepted them as evidences of an actual loan of her money made by Wilcox, and in her subsequent settlement with Wilcox, credited them in her account with him at their face value. Being a holder for value, she could, of course, transfer her interests unimpaired to the respondent, even though the transfer be only for the purposes of collection. Negotiable Instruments Act, Laws 1899, pp. 347, 348, 351, §§ 33, 37, 58 (Rem. & Bal. Code, §§ 3424, 3428, 3449; P. C. 357 §§ 65,

73, 115); *State ex rel. Adjustment Co. v. Superior Court*, 67 Wash. 355, 121 Pac. 847.

It would seem, moreover, that the testimony of the appellants with reference to the execution of the notes was hardly consistent. If it be true that they have no recollection of the circumstances surrounding the execution of the notes, it would hardly seem possible that they would remember that they signed them without an understanding of their character. On the part of Sigall, furthermore, there is evidence that he had at one time a different view of his liability from that expressed at the trial. It was shown that, at a time prior to the commencement of the action, he wrote to an attorney holding the note for collection as follows: "This will inform you that I saw my note at the bank in Tacoma yesterday and I admit that it is my signature, but I could not find Mr. Wilcox to talk the matter over. As it is so long back and I have to talk it over with Mr. Wilcox, as I thought he had paid the note long ago. However, you can assure Mrs. Theisz my note will be paid, if she will give me time, as I have quite a few documents like hers to pay." Surely he did not have, at the time this was written, the idea that he had signed the note without an understanding of its character.

It is probable, and we think the evidence fairly justifies the conclusion, that the notes were signed by the appellants as makers, as an accommodation to Wilcox, without their receiving value therefor, and with the expectation and belief that Wilcox would pay them when due. But their liability to the payee is none the less because of these facts, and the court rightly held them as bound.

The judgment will stand affirmed.

CROW, C. J., MOUNT, MAIN, and ELLIS, JJ., concur.