[Civil No. 2788.   Filed March 4, 1929.]

[274 Pac. 1047.]

ALBERT STEINFELD & CO., a Corporation, Appellant, v. MARTIN E. TEW, Appellee.

148

See Appeal and Error, 3 **C. J.**, sec. 1568, p. 1404, n. 65.

Bills and Notes, 8 **C. J.**, sec. 410, p. 260, n. 51, sec. 411, p. 263, n. 66.

Evidence, 22 **C. J.**, sec. 1384, p. 1077, n. 63.

Mr. Charles Blenman, for Appellant.

Mr. John B. Wright, for Appellee.

ROSS, J.—In 1916, the exact date not shown, the defendant executed and delivered to the plaintiff his certain promissory note or notes, and thereafter, on, to wit, March 17, 1920, such notes were renewed by the four promissory notes in this suit. The renewal notes were in form negotiable, and were for the sums of $1,079, $1,000, $1,000, and $211, each bearing interest at eight per cent per annum and payable twelve months after date. They were not paid when due, or at all, and on December 9, 1927, plaintiff brought this action upon a complaint in the usual form.

Defendant demurred to the complaint on the ground that it appeared upon the face thereof that the notes were barred by the six-year statute of limitations; answered that the original notes were given by defendant to take up and pay a debt owed plaintiff by three of defendant's sick, aged and insolvent friends, with the agreement of plaintiff that he would not be required to pay notes unless defendant realized the money out of some mining claims, a sale of which was then pending; that such sale was not made; that the renewal notes were given by defendant and accepted by plaintiff with the understanding and agreement

that defendant's obligation to pay renewal notes was contingent upon his realizing out of another pending sale of said mining claims; that, if such was not consummated, the notes would not be sued upon or considered of any value; that said sale was not effected, and by reason thereof the notes were void and of no force and effect, and totally without any consideration whatever. The demurrer was overruled.

At the trial, plaintiff introduced in evidence the notes and rested. The defendant was then permitted to testify in detail to the facts contained in his answer, over objection of plaintiff that such evidence was incompetent, as it tended to vary and contradict the terms of the written notes. The plaintiff's motion for a directed verdict was overruled, and the issue made by the answer was submitted to the jury under instructions that, if defendant sustained the allegations of his answer by a preponderance of the evidence, the verdict should be for him. The jury's verdict was in favor of defendant, whereupon judgment was entered.

The assignments are based upon the admission of defendant's testimony in support of his answer and in the refusal to direct a verdict in plaintiff's favor. We are satisfied both these assignments are good. The notes are unconditional promises by the maker (defendant) to pay to the payee (plaintiff), at a time certain, a definite sum of money, and upon their face import a consideration. Par. 4169, Civ. Code 1913 (Negotiable Instruments Law). They are none the less binding upon the maker because he gave them to the plaintiff to accommodate the original debtors, and that they were for an antecedent or pre-existing debt does not change the situation. Par. 4170, Id. The accommodation maker of a negotiable instrument is liable to the holder for value, notwithstanding such holder, at the time of taking the instru-

ment, knew him to be only an accommodation party. It is not necessary that such a party receive anything of value for his signature. Par. 4171, Id. Since an accommodation maker need not receive anything of value for his signature, the defense of want of consideration is not available to him. *Central Bank* v. *Perkins,* 43 Idaho 310, 251 Pac. 627; *Neal* v. *Scherber,* 207 Mass. 323, 93 N. E. 628; *Lowell* v. *Bickford,* 201 Mass. 543, 88 N. E. 1; *Metzger* v. *Sigall,* 83 Wash. 80, 145 Pac. 72; 8 C. J. 260, §§ 410, 411 and 412.

The agreement pleaded in the answer, to the effect that notes were to be paid out of moneys realized by defendant from the sale of mines, and, if no sale was consummated, the notes should not be sued upon or considered of any value, appears to have been entered into at the time of making note or before.

"The general rule, that evidence of what was said between the parties to a valid instrument in writing, either prior to or at the time of its execution, cannot be received to contradict or vary its terms, applies to promissory notes and bills of exchange." *Jamestown, etc.,* v. *Allen,* 172 N. Y. 291, 92 Am. St. Rep. 740, 64 N. E. 952. See, also, *Pleasant* v. *Arizona Storage etc. Co.,* 34 Ariz. 68, 267 Pac. 794.

There are exceptions to this rule, and one is where the instrument has been conditionally delivered and the conditions have not occurred. It is this character of cases upon which defendant relies. Two such cases are *Burke* v. *Dulaney,* 153 U. S. 228, 38 L. Ed. 698, 14 Sup. Ct. Rep. 816, and *Fidelity Title Guaranty Co.* v. *Ruby,* 16 Ariz. 75, 141 Pac. 117.

The facts in the first case were that the note sued on was given in payment of some interest in mines belonging to the payee, but conditioned upon the maker's being satisfied with the property after an investigation and examination thereof. It was held the maker should have been permitted to show this agreement, and that he elected, after investigating and

examining property, not to take it. The learned court said of the evidence that it "tended to show that the written instrument was never, in fact, delivered as a present contract, unconditionally binding upon the obligor according to its terms from the time of such delivery, but was left in the hands of Dulaney, to become an absolute obligation of the maker in the event of his electing, upon examination or investigation, to take the stipulated interest in the property in question. In other words, according to the evidence offered and excluded, the written instrument, upon which this suit is based, was not—except in a named contingency—to become a contract, or a promissory note which the payee could at any time rightfully transfer. Evidence of such an oral agreement would show that the contingency never happened, and would not be in contradiction of the writing. It would prove that there never was any concluded, binding contract entitling the party who claimed the benefit of it to enforce its stipulations.''

The facts in the other case were that the maker and the payee of the note and another person were partners. On the dissolution of the partnership the maker of the note was constituted the agent of the other partners to wind up the partnership business. He sold the assets and took the purchaser's note in payment thereof. He then gave his personal note (the one sued on) to the payee to the amount of the latter's interest, as represented in the note taken for the assets, with the agreement that it "should be merely a memorandum of the debt due from the maker'' upon the collection of the firm note. We held the facts brought it within the rule announced in the Burke-Dulaney case. In the same class is *Sayre* v. *Leonard*, 57 Colo. 116, 140 Pac. 196, cited by defendant.

We do not think the rule of these cases is the one that should apply to the facts of this case. In *Wash-*

*ington Savings Bank* v. *Ferguson,* 43 App. Div. 74, 59 N. Y. Supp. 295, the defense on the note was that it was signed by defendant to accommodate the maker and at the request of the plaintiff, who agreed that, if the maker defaulted in payment, it would first look to certain collateral and then to the personal liability of maker, and defendant should be held only for any balance after these sources were exhausted. This defense was held to be inherently bad. The court said:

"The defendant's accommodation indorsement was a written contract, to which the law has given a definite character. By that indorsement the defendant engaged that, if the note was not paid at maturity, he would, upon proper notice of dishonor, indemnify the holder. He now pleads that this written engagement was not the real engagement, that he was not to be liable according to the tenor of his indorsement, and that he was only to be liable for any balance which might remain unpaid upon the note after the application of the collaterals and the exhaustion of legal remedies against the maker. Thus, he distinctly seeks to vary or qualify his written obligation. Parol evidence tending in this direction is as clearly inadmissible in the case of a contract of indorsement, accommodation, or otherwise, as in the case of any other written agreement."

The court then reviews cases in which the delivery of the note sued on was conditional or without consideration and follows them with this statement:

"In none of them was it held that parol evidence could be given of a condition affecting the tenor of the contract obligation. Conditions relating to the delivery of the note may be shown, but not conditions affecting the character of the delivered obligation. The one goes to the existence and vitality of the contract. The other, conceding its existence and vitality, would annex a parol condition thereto, varying its contract essence. Here the defendant admits the delivery of the note, and that it was so delivered for value."

The true rule seems to be that, "when the oral testimony goes directly to the question whether there is a written contract or not, it is always competent; but when the effect of the oral testimony is to establish the existence of a written contract, which it is designed to contradict or change by parol, then the spoken word must yield to the written compact." *Smith* v. *Dotterweich,* 200 N. Y. 299, 33 L. R. A. (N. S.) 892, 93 N. E. 985.

Or, as is said in *Storey* v. *Storey,* (C. C. A.) 214 Fed. 973:

"And probably nowhere is the basis of the error more clearly and simply stated than in *Pym* v. *Campbell,* 6 El. & Bl. 370: 'The distinction in point of law is that evidence to vary the terms of an agreement in writing is not admissible, but evidence to show that there is not an agreement at all is admissible.' "

Neither from the answer nor the evidence does it appear that the delivery of the notes here was conditional or for a special purpose, but it does appear that such delivery was complete, and was made by the maker to the payee for the purpose of transferring the property in such notes; the only condition being as to the manner and source of obtaining the money with which to pay notes. Such a condition does not bring these notes within the rule as stated in section 16 of the Negotiable Instrument Act, Book 5, Uniform Laws Annotated (par. 4161, Civ. Code 1913). *Whiteman* v. *Bishop,* (Tex. Civ. App.) 289 S. W. 730.

In the very recent case of *Murphy* v. *Craig,* (C. C. A.) 28 Fed. (2d) 963, appealed from the district court of Arizona, the ninth circuit court of appeals laid down the rule, upon a state of facts very similar to the facts here, as follows:

"That the maker of a promissory note for the payment of a sum certain, on a day certain, will not be heard to say that the note is payable out of a particular fund only, or that a collateral agreement

authorizing the sale of collateral to satisfy the indebtedness secured by it is no agreement, and confers no authority at all is too firmly established to require extended discussion. 'Where an engagement is in general terms made payable in money, it is by legal implication payable in lawful money of the country, and parol evidence cannot be admitted to show an agreement that it should be paid in any other medium or manner, or that payment should be made only out of some particular fund.' 22 C. J. 1076. 'It is not permissible to show a parol agreement of the payee or holder of commercial paper not to enforce payment against the person or persons liable thereon; or a parol agreement that the payee or holder shall look to some other person or persons for payment, that he shall require payment only in a certain event or out of some particular fund, that he shall not require payment until a certain security has been exhausted, that he shall not call on one of the persons liable for payment until all remedies against the others have been exhausted, or that the obligation may be extinguished by part payment.' Id. 1091.'' See, also, *Sparks Enterprises* v. *Christman,* 95 Fla. 928, 117 South. 388.

We are satisfied that the defense pleaded and the evidence offered in support thereof contradicted and varied the terms of the notes, wherein the maker had unconditionally promised to pay to the payee a definite sum of money at a certain time, and that the court erred in permitting such defense and also in refusing to grant the motion for an instructed verdict.

The defendant has argued in his brief that it was error to overrule his demurrer raising the statute of limitations, but he has not presented such error by any cross-assignment. It is the rule that only fundamental errors will be noticed, in the absence of an assignment. If an appellee is dissatisfied with any order or ruling, the practice has been for him to indicate it by cross-assignments, *Murphey* v. *Brown,* 12 Ariz. 268, 100 Pac. 801; and we have refused to take notice of an appellee's argument in his brief

that error was committed to his prejudice when he has not assigned error, *Barth* v. *A. & B. Schuster Co.*, 25 Ariz. 546, 220 Pac. 391. The practice of requiring cross-assignments by the appellee seems to be almost universal.

In 3 C. J. 1404, section 1568, it is said:

"The general rule is well settled that errors operating against appellee or defendant in error will not be considered unless duly assigned. This is so, although appellee's bill of exceptions is otherwise properly in the record, and although cross-errors not assigned are argued or discussed in the brief. By failing to assign cross-errors appellee or defendant in error is estopped from complaining thereof."

The judgment is reversed, and the cause remanded, with directions that further proceedings be had in accordance herewith.

LOCKWOOD, C. J., and McALISTER, J., concur.