[No. 657.    Decided March 10, 1893.]

W. P. SAYWARD, H. G. MERCER AND NATHAN BUCKLIN, *Appellants*, v. THOMAS NUNAN, ALEXANDER MAITLAND AND W. J. WEEDIN, *Respondents*.

EXECUTION — TRIAL OF TITLE — PLEADING — EVIDENCE — JUDG-
MENT — BILL OF SALE — RECORD — CHATTEL MORTGAGE.

The failure to record a bill of sale within ten days after its execution, where the purchaser does not take possession of the property, renders it void only as to such parties as obtain intervening rights between the time of its execution and of its recording.

The holder of a chattel mortgage, who has not reduced the property to his possession, cannot maintain a proceeding as owner to recover possession thereof, when it has been levied upon as the property of another.

Where the proof creates a doubt as to whether an instrument effects a conditional sale of property or is a chattel mortgage thereof, the instrument should be treated as a chattel mortgage.

The trial of title to property levied upon, where it is claimed by a third party, is based upon the allegations of the affidavit setting up ownership, and, a complaint being unnecessary, it is not error to strike it from the files.

The act of a debtor in putting another in the constructive possession of his property under a bill of sale does not conclude his creditors from showing that the debtor himself was, and claimed to be, in possession.

Upon the trial of title to property levied upon under execution, the proper judgment against a claimant who fails to make good his title to the property is for the amount of the execution creditors' claim, not exceeding the value of the property in controversy, irrespective of any priority the claimant may be entitled to as against such creditor.

Proof of the condition and value of property before and after the date of a bill of sale thereof is inadmissible in the absence of proof that the condition and quantity of the property was the same at such times as it was when the bill of sale was executed.

*Appeal from Superior Court, Island County.*

*Battle & Shipley*, for appellants.

*Lewis & Humphrey*, for respondents.

The opinion of the court was delivered by

SCOTT, J.—The respondents Maitland and Weedin obtained a judgment against one W. H. Thayer. Executions were issued thereon to Thomas Nunan, sheriff of Island county, and were levied by him upon a certain quantity of logs in controversy in this action. The appellant, W. P. Sayward, claiming to be the owner of said logs and entitled to the possession thereof, instituted proceedings under §§ 491 to 495, inclusive, Code of Procedure, relating to claims by third persons to property levied upon. The appellants Mercer and Bucklin were his sureties upon the bond given in pursuance of said proceedings. A trial was had and judgment rendered in favor of the execution creditors, and the claimant and his said sureties appealed.

It is conceded that prior and up to April 7, 1891, said W. H. Thayer was the owner of certain property known as the Useless Bay Logging Camp, which included teams and a logging outfit; and that he had various contracts with parties thereabouts, permitting him to cut standing timber on their lands, respectively, and to remove the same, which were known as logging contracts. Appellant Sayward was and is the owner of the Port Madison Mills, and through one G. A. Meigs, his agent, had, prior to April 7, 1891, furnished Thayer with supplies which were used by him in the operation of said logging camp, and he claimed that Thayer was indebted to him therefor on said April 7th. Prior to this time Thayer had sold and delivered to Sayward a boom of logs, and on said April 7th, Thayer executed and delivered to Sayward a paper writing purporting to be an unconditional and absolute bill of sale, including and specifying all the property used in operating said logging camp, together with the various timber contracts aforesaid.

Prior to this time Thayer had given to one Holcombe a mortgage to secure the sum of $1,400, owing by him to

Holcombe, and interest thereon, which mortgage covered a part of the property belonging to said camp and included in said bill of sale, which was made subject to this mortgage. The bill of sale was not filed for record until the 21st day of April, 1891. The levies upon the logs in question were made in the month of October following, and the case turns on the effect which is to be given to this instrument. The appellants contend that said instrument is what it purports to be, an absolute bill of sale, while the respondents contend that it was understood to be, and is in effect, a mortgage only.

It is further contended by the respondents, if said instrument is to be regarded as a bill of sale, that in consequence of its not having been recorded within ten days after it was given, as is required by § 1454, Gen. Stat., it is absolutely void as to the existing or subsequent creditors, if the property, as is claimed, was not taken possession of by the vendee. This contention, however, is not well founded; the failure to record the bill of sale within ten days would only protect such parties as had obtained intervening rights after its execution and before the time it was filed for record. *Crippen v. Fletcher*, 56 Mich. 387 (23 N. W. Rep. 56). The respondents' rights under said execution levies did not accrue until some time after the instrument was recorded.

It is contended by the appellants that there was an actual transfer of the possession of said property to Sayward at the time the bill of sale was executed, and that said camp was thereafter conducted under the management of his agents. We are satisfied, however, from an examination of the proofs, that there was no change of possession in fact, especially such an open and notorious change of possession as is required in such a case. *Steele v. Benham*, 84 N. Y. 634; *Siedenbach v. Riley*, 111 N. Y. 560 (19 N. E. Rep. 275). It is claimed that the camp was in charge of

one Nickols, a brother-in-law of Thayer, by virtue of an in-
strument as follows:

"USELESS BAY, April 7, '91.

"I have this day bargained and agreed to take charge of
the logging camp purchased of W. H. Thayer by W. P. Say-
ward, of Port Madison Mills, and manage the same to the
best of my ability, at the rate of sixty-five dollars per
month.                              H. B. NICKOLS."

Nickols' name to this instrument was signed at the time
by Thayer, and the great preponderance of the proof is to
the effect that Thayer continued the operation and manage-
ment of the camp after the execution of the bill of sale
practically in the same manner as it had been conducted by
him before it was given.   Orders were sent to him from
the mill at various times for logs, and he purchased supplies
from time to time of Sayward, who carried on a store in
connection with his mill, said supplies being for the purpose
of carrying on the camp and for supplying clothing and
other articles to the men employed about said camp, and
such articles were charged to Thayer individually.   Of
course the failure to take possession would not be a mate-
rial matter if the bill of sale was in fact what it purported
to be, an absolute transfer of the property, it having been
recorded prior to the time the rights of the respondents
accrued.

If said instrument is to be regarded as a chattel mortgage,
the property not having been reduced to the possession of
the mortgagee, he could not maintain this proceeding as
owner to recover possession thereof under the holdings of
this court, as a chattel mortgage under our law does not
pass the title to the property, but only creates a lien thereon.
*Silsby v. Aldridge*, 1 Wash. 117 (23 Pac. Rep. 836); *Ker-
ron v. North Pacific, etc., Mfg. Co.*, 1 Wash. 241 (24 Pac.
Rep. 445).   Furthermore, it is questionable, at least, if said
instrument was merely given as security, whether the re-
cording of it would help the appellants' claim in any way.

If it is to be treated as a mortgage, § 1648, Gen. Stat., provides that a chattel mortgage shall be void against creditors of the mortgagor. or subsequent purchaser and "incumbrances" of the property for value and in good faith, unless it is accompanied by an affidavit of the mortgagor that it is made in good faith and without any design to hinder, delay or defraud creditors, and is acknowledged and recorded in the same manner as is required by law in the conveyance of real property. This instrument was not so executed. To hold that the affidavit and acknowledgment are not required where a bill of sale is given as security and is in effect a mortgage, would be to render such provisions of the law in relation to chattel mortgages nugatory, for the same could be avoided and fictitious claims created and spread upon the records by giving a mere bill of sale — a fraudulent device — instead of a mortgage. Jones, Chat. Mort., § 275; *Shaw v. Wilshire*, 65 Me. 485; *Bird v. Wilkinson*, 4 Leigh, 266–274; *First National Bank v. Damm*, 63 Wis. 249 (23 N. W. Rep. 497); *Yenni v. McNamee*, 45 N. Y. 614. If it was intended as a mortgage it could hardly come under § 1454, because the bill of sale would not operate to *transfer* the property. Sec. 1646, same volume of the code, provides that mortgages may be made upon all kinds of personal property, but does not require the same to be in any particular form, and if a bill of sale is given as security and is only in fact and effect a chattel mortgage it should be held to be within the provisions of the act relating to chattel mortgages.

Under the great weight of the proof, appellants' claim that the instrument in question was an absolute bill of sale cannot be maintained. It is admitted that neither Sayward nor any of his agents had seen the property in question prior to, or at the time of, the execution of the bill of sale, nor until about a month thereafter. The consideration expressed in the bill of sale was $500, and it was made subject to the

Holcombe mortgage. This mortgage was subsequently paid by Sayward, but instead of canceling the same he took an assignment thereof and held the debt against Thayer. The amount paid therefor was $1,650, and this, with the $500 expressed in the bill of sale, made $2,150 as the total consideration for the property in question. The appellants could not tell anything about the condition or value of the property described in the bill of sale. The testimony upon the part of the respondents shows that such property, on April 7, 1891, was worth $6,500. While this estimate may have been somewhat excessive, it fairly appears that said property was worth a great deal more than $2,150, and the discrepancy between the consideration expressed and the value of the property is so great as to afford a strong presumption that the intention of the parties was not to make an absolute transfer of the title. It is claimed by the appellants that at the time the bill of sale was executed Thayer was credited with $500 upon his account which it was claimed he was owing at the time to Sayward. Thayer disputed this and claimed that at said time Sayward was indebted to him for logs he had delivered to him over and above the amount he owed for merchandise. In this respect we think the weight of the testimony is with the respondents. The accounts were in the appellants' possession and were not produced upon the trial, nor was the failure to produce them satisfactorily accounted for. There was no accounting between them at the time the bill of sale was given and there had been none previously.

The most that could be claimed for this bill of sale is that it was a conditional sale of the property, and if this claim could be maintained it would operate to transfer the title to appellant Sayward sufficient for him to maintain this proceeding to recover possession as owner.

While the negotiations were pending, Thayer claims that

he took a chattel mortgage to one Meigs, the agent of Sayward in charge of said mills, and that he refused to accept it, but said that he would take a bill of sale of the property, claiming, as Thayer testifies, that it would afford them better security.   Consequently the bill of sale in question was prepared, and with it was a defeasance which was submitted to said Meigs by Thayer to be executed and returned to him.   This instrument referred to the bill of sale, and provided that the property therein described should be reconveyed to Thayer, subject to the following conditions:

"*Provided*, The said W. H. Thayer shall faithfully and diligently conduct and manage the business of logging with the above described outfit and property, for which purpose we hereby agree and bind ourselves to hire and employ, and do hereby hire and employ, him as manager for the period of three years from the date hereof, and shall, from the proceeds of said business, or by other means pay or cause to be paid to us, our executors, administrators or assigns, within three years from the date of this instrument, the full sum of his indebtedness due us for supplies and cash to run said camp."

And it provided that Thayer might demand such reconveyance at any time within the three years, upon the payment of such indebtedness.

This last instrument was never executed.   Thayer testifies that Meigs agreed to execute the same and send it to him.   That upon the night when the bill of sale was executed Meigs claimed that he was too tired to proceed with the business further, but would postpone it till morning, and that he only appeared in the morning a few minutes before the time for Thayer to leave the mill for the logging camp on the steamer then about to start, and that thereupon Meigs said he would execute said instrument and send it to Thayer.   Meigs denied having had any such conversation and that such a document was ever submitted

to him or called to his attention, and he denied that they had ever talked about a chattel mortgage. His testimony, however, was overborne by that of the respondents. Had such a defeasance as is above described been executed, it would have tended strongly to support the claim made by appellants that at least a conditional sale of the property was effected. But it appears that Sayward, through his agents, undertook to place himself in such a position that he could claim the property had been absolutely sold to him. In this he has completely failed under the proofs, and we do not think that the unsigned document under the circumstances should have the effect of making the transaction a conditional sale instead of a mortgage. In a case of doubt as to whether an instrument is to be treated as effecting a conditional sale of property or as a chattel mortgage, it is generally resolved in favor of the latter. 1 Cobbey on Chat. Mort., § 94; *Rockwell v. Humphrey*, 57 Wis. 410 (15 N. W. Rep. 394).

Certain errors are alleged by the appellants in rulings made by the court during the progress of the trial. After filing his affidavit and bond, Sayward filed a complaint setting up his claim to said property, and upon a motion of the respondents this complaint was stricken from the files. There was no error in this, for in such proceedings the case is tried upon the allegations of the affidavit.

Appellants contend that the court erred in allowing the respondents to show that Thayer claimed to be, and was, in possession of the property and conducted the camp after the execution of the bill of sale, because Thayer had signed Nickols' name to the paper in question. Respondents, however, were not concluded by the action of Thayer in the premises, and had a right to go into the whole transaction.

Appellants allege that the court erred in rendering a judgment against them for the amounts claimed by the respond-

ents, disregarding the right of appellant Sayward to be first paid the amount due him from Thayer upon his account and on the Holcombe mortgage; but there was no error here. The court rendered the proper judgment in the premises for the amount of the respondents' claims, the same not exceeding the value of the property in controversy. Sayward could not recover Thayer's indebtedness to him in this proceeding, whatever legal proceedings he could take with regard thereto thereafter. Sec. 495, aforesaid, provides for the judgment that was rendered where the claimant fails to make good his title to the property.

The appellants allege that the court erred in refusing to permit them to show the condition and value of the property included in the bill of sale before and after April 7, 1891. There was no error here. There was no proof made or offered that the condition and quantity of the property was the same at the particular times when they wanted to prove its value as it was when the bill of sale was executed.

Several other errors were alleged by the appellants, but the same go to immaterial matters and have no bearing upon the question as to what the effect of the purported bill of sale was. Consequently it is unnecessary to further allude to them.

Affirmed.

DUNBAR, C. J., and STILES and ANDERS, JJ., concur.

HOYT, J., dissents.