[No. 16741. Department One. January 12, 1922.]

JOSEPH H. KUHN, *Appellant*, v. J. S. GROLL *et al.*,
*Respondents.*[1]

SALES (168)—CONDITIONAL SALES—CONTRACT—CONSTRUCTION. Conditional sales contracts with forfeiture provisions are not favored by the law, and a court will not view a contract of sale as a conditional sale until it is clearly proven to be one.

PLEDGES (3) — WHAT CONSTITUTES — DELIVERY AND POSSESSION. Where the holder of corporate stock sells it to another, who pays part of the price and delivers promissory notes for the balance, the certificate of stock being left in the possession of the seller without any express agreement as to the purpose other than that he retain possession until the notes are paid, the transaction constitutes a pledge of such stock to secure the indebtedness of the purchaser, instead of a conditional sales contract.

BILLS AND NOTES (9, 137)—EXECUTION—LIABILITY—ACCOMMODATION MAKER. Under Rem. Code, § 3420, providing that an accommodation maker of a promissory note is liable thereon to a holder for value, the fact that one signs notes given for a sale of corporate stock in which he has no interest only as an accommodation maker, and that extension of time for the notes was granted without his knowledge or consent, would not exonerate him from liability.

HUSBAND AND WIFE (82)—COMMUNITY PROPERTY—DEBT OF HUSBAND—BILLS AND NOTES. A promissory note given by a husband to promote the financial welfare of a canning company in which he is interested, thereby redounding to the benefit of the community, is a community obligation.

Appeal from a judgment of the superior court for King county, Brinker, J., entered April 6, 1921, upon findings in favor of the defendants, in an action on promissory notes and to foreclose a pledge, tried to the court. Reversed.

*R. H. Coshun* and *Preston, Thorgrimson & Turner,* for appellant.

*Dan Earle,* for respondents.

[1] Reported in 203 Pac. 44.

PARKER, C. J.—The plaintiff, Kuhn, seeks recovery from the defendants and their communities upon three promissory notes, which are in form unconditional and negotiable, executed by defendants J. S. Groll and E. B. Burwell on September 30, 1918, whereby they promised to pay to the plaintiff $500 on October 7, 1918; $800 on October 10, 1918; and $1,550 on December 1, 1918; and also seeks foreclosure of his claim of lien upon seventy shares of the capital stock of the San Juan Canning Company, the certificate for which he alleges, being the property of the defendants, was by them delivered to and left in his possession, at the time of the execution of the notes, as a pledge to secure the payment of the indebtedness so evidenced.

The defendants Groll and wife, while admitting the execution of the notes, separately pleaded, in substance, that the notes were given merely to evidence the amount of the unpaid balance upon the purchase price of a contract for the sale of the shares of stock to them by the plaintiff, whereby it was agreed that "the title to and possession of said stock certificate was to remain in the plaintiff until the payment of the entire purchase price"; that they had, before the execution of the notes, paid to plaintiff $3,000 upon the purchase price of the stock, and that, after the execution of the notes, the contract for the sale of the stock had been rescinded by mutual agreement between them. This answer concludes with a prayer for an affirmative judgment against the plaintiff in the sum of $3,000, and that the notes be canceled.

The defendants Burwell and wife, while admitting the execution of the notes, separately pleaded, in substance, that the defendant E. B. Burwell signed the notes only as an accommodation maker, without other consideration, as plaintiff was fully advised; that material extensions of time for the payment of the

notes had been granted without his knowledge and consent; and further pleaded a mutual rescission of the contract for the sale of the stock, substantially as separately pleaded by the defendants Groll and wife. This answer concludes with a prayer for judgment absolving Burwell and wife from liability upon the notes.

The plaintiff's replies put in issue all the affirmative facts so pleaded in these answers. Upon the issues so made, a trial was had in the superior court for King county, which resulted in findings and a judgment denying to the plaintiff recovery upon the notes, and also denying to the defendants Groll and wife recovery upon their claim of $3,000 made by them against the plaintiff. From this disposition of the cause in the superior court, the plaintiff has appealed to this court. The defendants Groll and wife did not appeal, but submitted to the judgment denying them recovery upon their claim of $3,000 rested upon their claimed mutual rescission of the contract.

It is apparent, from the record of the trial of the case in the superior court, that counsel for respondents not only presented their case in that court upon the theory of mutual rescission of the stock sale contract, as pleaded, but also upon the theory that the contract was, in legal effect, a conditional sale, giving to appellant the right of forfeiture of all rights of respondents therein, including the $3,000 paid upon the purchase price, which right of forfeiture appellant elected to exercise, and thereby waived his right to recover upon the notes evidencing the balance of the purchase price. The latter is the theory here principally relied upon by counsel for respondents to sustain the judgment; though it seems somewhat inconsistent with and a departure from the theory of the pleaded

defense of mutual rescission. The trial court also rested its judgment upon the theory that the contract was, in legal effect, a conditional sale, with right of forfeiture in appellant upon failure of payment of the purchase price, and that he had elected to exercise such right and thereby waived his right to sue upon the notes.

In view of the contentions here made, it seems necessary to go back to the beginning of the dealings of these parties between each other touching the sale of this stock. The evidence is not free from conflict, but we think the following facts are fairly well established thereby: In the year 1916, respondents Groll and Burwell were the owners of shares of stock in the San Juan Canning Company and were financially interested in the success of that company. While they were so interested, appellant Kuhn purchased the seventy shares of stock here in question. Just what Groll and Burwell had to do with the bringing about of that purchase, or who it was from—though there is a hint of its being from so-called treasury stock of the company—is not made plain; but that they were interested in having appellant make the purchase, and that, as an inducement for his doing so, they promised to repurchase the stock from him if he so desired, and thus induced him to make the purchase, is made to appear with fair certainty. The purchase was so made by Kuhn and a certificate for the shares caused to be issued to him accordingly, on May 16, 1916. Kuhn thereafter having requested that the stock be repurchased by Groll and Burwell, they made a contract with him accordingly. Soon thereafter they made two cash payments of $1,000 each on the purchase price. The certificate of stock was retained by appellant, evidently as security for the payment of the balance of

the purchase price. The record is silent, however, as to any express agreement as to appellant then retaining possession of the stock, or as to the purpose of such retention of possession; but that the sale then became completed, except as to the payment of the balance of the purchase price, we think is certain. There was then no express agreement as to time of payment of the balance of the purchase price; so, of course, the entire purchase price became immediately due. The two $1,000 payments were made by Burwell by his own checks delivered to appellant.

After repeated fruitless demands for payment of the balance of the purchase price, made by appellant upon both Groll and Burwell, they all met together with a view of making a final settlement with reference to the payment of the balance of the purchase price. This occurred on September 30, 1918. Appellant supposed that he was then going to receive the payment of the entire purchase price in cash, and brought the stock certificate with him for delivery to Groll and Burwell. He was then informed that they could pay only a thousand dollars in cash at that time, but would give him their notes for the balance. This, appellant felt obliged to accept for the time being. The $1,000 was then paid to appellant, and Burwell then computed the balance due, including some interest, the total of which was found to be $2,850. Burwell then drew up these notes in his own handwriting and signed them; they being also then signed by Groll, and delivered to appellant. They then all agreed that appellant should retain the stock certificate until the notes were paid. There was no express agreement then made as to whether appellant should hold the stock certificate as a pledge, as security for the balance of the purchase price evidenced by the notes, or as upon a conditional

sale with right of forfeiture on his part. If this were all the information we had touching that question, it would seem to follow, almost as a matter of course, that the stock was left with appellant as a mere pledge to secure payment of the notes.

It is the acts and the words of the parties following the events above related which counsel for respondents argue put a construction by the parties themselves upon the contract for the sale of the stock which made it in legal effect a conditional sale, rather than a mere pledge of the shares of stock to secure the notes. Thereafter appellant made repeated demands upon Groll and Burwell for the payment of the notes. Being unsuccessful in such demands, he expressed his intention of selling the stock; and, indeed, seems to have gone so far as to offer it for sale. He did not, however, sell the stock, or come anywhere near doing so. He ceased his efforts in that behalf on being advised that he had no right to sell the stock, or cause it to be sold, except through legal foreclosure proceedings. According to Groll's testimony, appellant told him, at about the time appellant was attempting such sale of the stock, that the deal was "all off with us", and that he [Groll] assented thereto. This testimony, however we regard as quite unsatisfactory in the light of other testimony and the fact that thereafter, upon further demands made by appellant upon respondents for payment of the notes, such prior rescission of the contract was never asserted or claimed by either of them, but further time requested for payment of the notes. The notes were never surrendered by appellant, nor did he ever renounce in writing his right to the payment of the debt evidenced thereby.

Was the contract for the sale of the stock, or did it ever become, a conditional sale contract, as argued by counsel for respondents? We think not. We are to

remember that conditional sales with forfeiture pro-
visions therein are not favored by the law, and that a
contract of sale must be clearly proven to be one of
such conditional sale before a court will so view it.
The general rule touching this question is well stated
in 24 R. C. L. 446, as follows:

"Conditional sales are not favored in law, and
where it is doubtful from the face of the instrument
whether the contract is a conditional sale or a mort-
gage, the courts generally treat it as a mortgage, for
the reason that such construction will be most apt to
attain the ends of justice, and prevent fraud and op-
pression, . . ."

We are not unmindful of the argument of counsel
for respondents that in this particular case there will
result a greater injustice by holding this transaction
to be, in legal effect, a pledge rather than a conditional
sale, made seemingly because the disposition of this
particular case against them may result in a deficiency
judgment against them. But that does not argue
against the general rule. If they were now insisting
upon the return of the $3,000 paid by them upon the
purchase price, as pleaded in Groll's affirmative
answer, their counsel would probably be invoking this
general rule in support of such contention. The force
of the rule is not impaired by the mere exigencies of a
particular case. Counsel for respondents also invoke
the rule as announced in our decision in *Lundberg v.
Kitsap County Bank*, 79 Wash. 75, 139 Pac. 769, as
follows:

"While it is a distinguishing feature of conditional
sale contracts that the title to the property remains in
the seller until payment of the purchase price, it is
also held that this reservation of title may be im-
plied. . . ;"
the argument being that the circumstances attending
the making and alleged construing of this contract by

the parties thereto warrant the inference that they intended it to be a conditional sale contract.

We may, for argument's sake, concede this to be a correct statement of such general rule; but aside from the support such general rule may lend to respondents' ultimate claim here made, that decision, we think, does not aid them, for it involved a contract in writing which in express terms provided for a forfeiture to the vendor of "all payments already made" by the vendees upon their failure to complete payment of the full purchase price. The question was not so much as to the contract being one of conditional sale, as to there being any contract at all. When the latter question was decided in the affirmative, it followed, almost as a matter of course, that the sale was a conditional one, because of the express terms of forfeiture embodied in the receipt which was held to be a sale contract, against contentions made to the contrary. There are also cited by respondents' counsel the following decisions of this court as supporting the contention that this transaction was a conditional sale: *Winton Motor Carriage Co. v. Broadway Automobile Co.,* 65 Wash. 650, 118 Pac. 817, 37 L. R. A. (N. S.) 71; *Stewart & Holmes Drug Co. v. Reed,* 74 Wash. 401, 133 Pac. 577; *Croup v. Humboldt Quartz & Placer Min. Co.,* 87 Wash. 248, 151 Pac. 493, L. R. A. 1918A 537; and *Barbour v. Hodge,* 99 Wash. 578, 170 Pac. 115. A critical reading of these decisions will disclose that they all relate to the exercise of a choice of remedy by vendors under conditional sale contracts which plainly were such. Those decisions do not involve the question of the existence of such contracts; that is, they all involve the question of whether the vendor had elected to reclaim the property or had elected to recover the purchase price thereof, there being no question of the

nature of the contracts involved. Our later decision in *Jordan v. Peek,* 103 Wash. 94, 173 Pac. 726, cited by counsel for respondents, involved the respective claimed rights of the parties under the provisions of a statute of South Dakota not applicable here, and we think is of no controlling force in our present inquiry.

We have here: a sale unattended by any express agreement, written or oral, evidencing it to be a conditional sale; a final settlement between the parties as to the amount of the unpaid balance of the purchase price, made long after the making of the contract, and the execution and delivery by the vendees to the vendor of promissory notes, unconditional and negotiable in form, for such unpaid balance; the certificate for the stock so sold left in the possession of the vendor without any express agreement as to the purpose of so leaving it in his possession, but only that it remain in his possession until the notes are paid; and the possession of the notes up to the present time remaining with the appellant. These facts, we think, would of themselves render the inference all but conclusive that the certificate for the stock was left in appellant's possession merely as a pledge to secure the payment of the indebtedness evidenced thereby, without any right of forfeiture in him as against respondents.

Nor do we think there was, after the making of the notes, any such words or acts by the parties as amounted to a construction of the sale contract as being a conditional sale, even conceding that the contract as finally made—in any event, not later than the giving of the notes—was capable of such construction or change by anything short of a new contract. As we view the evidence, it does not show that appellant ever exercised such ownership over the certificate of stock as to estop him from now claiming his interest

therein as being nothing more than the lien he now claims. He did not surrender the notes or renounce his claim for the payment of the debt evidenced thereby, as provided by § 3512, Rem. Code (P. C. § 4193), which seems to be in effect in the nature of a statute of frauds touching the question of the makers of negotiable promissory notes being absolved from liability thereon other than by payment. *Baldwin v. Daly*, 41 Wash. 416, 83 Pac. 724; *Pitt v. Little*, 58 Wash. 355, 108 Pac. 941. These considerations, we think, also dispose of the contention of counsel for respondents rested upon the theory of mutual rescission of the contract, if indeed there be now any proper place in our present inquiry for the consideration of such contention.

Some contention is made in respondents' behalf that the leaving of the certificate of stock with appellant did not constitute a pledge thereof as security for the payment of the notes because there was not, at the time of the making of the notes, or thereafter, any actual physical delivery of the stock certificate by respondents, or either of them, to appellant. We think, plainly that was not necessary to constitute a pledge, since the stock certificate, being already in the possession of appellant, was, by agreement of the parties, left there with the understanding that it should so remain until the debt evidenced by the notes was fully paid. It is true that the law requires a delivery of the pledged property from the pledgor to the pledgee and a retention of it by the pledgee in order to make the pledge fully effectual as security. We think the law applicable to the situation we find here is well stated in 21 R. C. L. 643, as follows:

"The requirement of possession is an inexorable rule of law, adopted to prevent fraud and deception,

for, if the debtor remains in possession, the law presumes that those who deal with him do so on the faith of his being the unqualified owner of the goods. If, however, the pledgee has the thing already in his possession, the very contract transfers to him, by operation of law, a virtual possession thereof as a pledge the moment the contract is completed.''

Some contention seems to be made in respondents' behalf, though it is somewhat obscured in their counsel's brief, that respondent Burwell is not liable upon the notes because he was not interested in the sale contract, was not one of the purchasers of the stock, signed the notes only as an accommodation maker, and there was a granting of extensions of time for the payment of the notes without his knowledge and consent. We think the answer to this contention is found in the fact that there is nothing upon the faces of the notes indicating that Burwell signed them in any other capacity than as maker. In § 3420, Rem. Code (P. C. § 4100), being a provision of our negotiable instruments act we read:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party.''

Our decisions in *Bradley Engineering and Manufacturing Co. v. Heyburn,* 56 Wash. 628, 106 Pac. 170, 134 Am. St. 1127, and *Metzger v. Sigall,* 83 Wash. 80, 145 Pac. 72, have given full force and effect to this provision of our negotiable instruments act. Besides, we think the evidence in this case calls for the conclusion that Burwell signed these notes, not as an accommodation maker, but as an original maker, for the purpose

of evidencing a debt for which he was as much obligated as was Groll, in that, as we think the evidence shows, he was a joint purchaser with Groll of the stock from appellant.

There is a suggestion in the brief of counsel for respondents—though seemingly not seriously argued—that in no event is the community consisting of Burwell and wife liable upon these notes. What we have already said seems to be sufficient to dispose of any such contention, against the community consisting of Burwell and wife. But, even should we regard Burwell as an accommodation maker of these notes, we still think, viewing the whole history of the dealings of these parties from the time respondents Groll and Burwell, upon the original purchase of the stock by appellant, agreed to repurchase it from him, manifestly to promote the financial welfare of the San Juan Canning Company, and in turn their own welfare, that all acts done and obligations incurred by Burwell were so connected and intended to redound to the benefit of the business of the community that the signing of these notes became a community obligation. We feel constrained to so hold, especially in view of the presumption that the signing of these notes by Burwell, as maker, was for the benefit of the community. The decisions of this court in *Horton v. Donohoe Kelly Banking Co.,* 15 Wash. 399, 46 Pac. 409, 47 Pac. 435, and *Shuey v. Holmes,* 22 Wash. 193, 60 Pac. 402, lend support to this conclusion.

The judgment of the superior court is reversed, and the cause remanded to that court with instructions to enter judgment awarding foreclosure and recovery as prayed for in favor of appellant, Kuhn, and against all of the respondents, the Grolls and Burwells, including their communities, for the full amount of the

principal and interest due upon the notes. The superior court is further directed to award to appellant, Kuhn, a reasonable attorney's fee as a part of his costs and disbursements incurred in the prosecution of the case in that court, a question submitted to but left undetermined by that court because of the deciding of the case therein in favor of respondents.

BRIDGES, FULLERTON, MITCHELL, and TOLMAN, JJ., concur.