[No. 19441. Department Two. February 1, 1926.]

# A. F. Low, *Appellant*, v. W. R. Colby Jr., *et al.,* Respondents.[1]

[1] Pledges (4)—Distinguished From Conditional Sale—Evidence as to Character of Transaction. Under the rule that conditional sales are not favored in law, an escrow agreement evi-dences an absolute sale and pledge or mortgage, rather than a conditional sale, where it acknowledged receipt of $9,325 cash as part payment of 180,000 Russian roubles, there was no for-feiture clause, and the roubles, with a note for $20,000 in pay-ment therefor, were deposited in escrow, the escrow holder to deliver an equivalent portion of the roubles on part payment of the note, and in case the note was not paid at maturity to return to the seller the remaining roubles not delivered to the buyer.

[2] Sales (181)—Conditional Sales—Waiver of Condition of For-feiture—Delivery of Goods to Buyer—Election. A verdict finding that a conditional sales vendor of Russian roubles, de-posited in escrow, had withdrawn the escrow before suit for the price, and thereby made an election to rescind the sale, pre-venting recovery for the price, is not sustained by substantial evidence, where the only proof of the fact was the testimony of the vendee and a witness that the escrow holder had made a declaration to that effect, both the plaintiff and escrow holder denying that any such withdrawal had been made.

[3] Escrows (1)—Nature and Requisites — Segregation of Arti-cles. It cannot be claimed that 180,000 Russian roubles, placed in escrow, were not segregated, where they were by agreement temporarily withdrawn from escrow on putting up 20,000 other roubles, and restored to escrow when the 20,000 were returned.

[4] Sales (26)—Construction—Executory or Executed Contracts. Where 180,000 Russian roubles were sold, part of the purchase price paid in cash, and the balance by a promissory note, and the note and roubles were placed in escrow until the note was paid, the contract was not an executory one, but a sale and pledge back, securing the note for the balance, on which the payee was entitled to sue as upon an executed contract of sale.

Appeal from a judgment of the superior court for King county, Smith, J., entered April 11, 1925, upon

[1]Reported in 243 Pac. 18.

the verdict of a jury rendered in favor of defendants, in an action upon a contract. Reversed.

*Preston, Thorgrimson & Turner,* for appellant.

*Kerr, McCord & Ivey* and *Wm. Z. Kerr,* for respondents.

MAIN, J.—This action is brought on a promissory note signed by W. R. Colby, Jr., who will be referred to as though he were the only party defendant. The execution of the note was admitted by the answer, but liability was denied. The cause was tried to the court and a jury, and resulted in a verdict in favor of the defendant. The plaintiff made a motion for judgment notwithstanding the verdict and, in the alternative, for a new trial, both of which were overruled. Judgment was entered upon the verdict, and the plaintiff appeals.

The facts are these: On April 1, 1918, the appellant by what is designated an escrow agreement, sold to the respondent one hundred eighty thousand Russian roubles, which agreement was in words and figures as follows:

"ESCROW AGREEMENT

April 1, 1918.

"For delivery of One Hundred Eighty Thousand Roubles, Genuine Russian Currency from A. F. Low to W. R. Colby, Jr.

"We Hereby Acknowledge receipt from A. F. Low of One Hundred Eighty Thousand Roubles,—Russian Currency, in notes of 100 roubles, denomination, 155,-000—100, 25,000—500, issued prior to 1914; also from W. R. Colby, Jr., of his note for Twenty Thousand Dollars, at 7% interest, payable every ninety (90) days, drawn in favor of A. F. Low, payable on or before ninety (90) days after the declaration of peace between the United States of America and Germany.

"Said Roubles and note will be retained by us except as hereinafter indicated.

"Upon payment to us by W. R. Colby, Jr., of any

portion of said note, which payment will be turned
over by us to A. F. Low, we will deliver to W. R. Colby,
Jr., an equivalent number of roubles figures at .11 1.9
gold and endorse said payment on said note.

"Should W. R. Colby, Jr. fail to meet the principal
or interest of said note at final maturity, then said note,
together with all the roubles, or such as may then be on
hand, will be delivered to A. F. Low.

"Seattle National Bank,
"By C. L. LaGrave, A. Cash.

"I guarantee the above roubles to be genuine legal
Russian currency.                        "A. F. Low.

"We accept the terms of the above Escrow.
"W. R. Colby, Jr.
"A. F. Low.

"O. K., Apr. 2, 1918.                    W. R. Kaklke.

"I, A. F. Low, hereby acknowledge receipt of
$9,325.00 cash from W. R. Colby, Jr., as part payment
of the above 180,000 roubles, in addition to the above
note of $20,000.00, held in escrow as stated.
"A. F. Low."

Some months prior to this, the respondent had, from
time to time, made purchases of Russian roubles from
appellant and paid for the same either by cash or note.
According to the evidence of the respondent, the escrow
agreement was a consolidation of all transactions be-
tween them with reference to the roubles. It will be
noticed that this agreement acknowledges receipt of
payment of $9,325 in cash, and the giving of a note for
$20,000 for the balance. Subsequently and until
October, 1920, the respondent paid the interest as it
became due upon the note. Thereafter nothing was
paid, and the present action was brought in August,
1923.

[1] The first question is, whether the escrow agree-
ment evidenced a conditional sale, or an absolute sale
with a pledge of the roubles for the payment of the
note. The last clause of the agreement provides that,

should the principal and interest of the note not be paid at maturity "then said note, together with all the roubles, or such as may then be on hand, will be delivered to A. F. Low." In the instrument there is no provision for forfeiture, which is one of the chief characteristics of a conditional sales agreement. If the instrument was intended to be a conditional sale, then, if the appellant elected to retake the roubles as the respondent claims he did, he would have no right to the note. It is well settled that, if the vendor under a conditional sales contract elects to retake the property, that is his sole and only remedy, and he has no right to recover further upon the debt. Where it is doubtful, from the face of an instrument, whether the contract is a conditional sale or a mortgage, the courts generally treat it as a mortgage, for the reason that such construction will be most apt to attain the ends of justice and prevent fraud and oppression. In 24 R. C. L. 446, it is said:

"Conditional sales are not favored in law, and where it is doubtful from the face of the instrument whether the contract is a conditional sale or a mortgage, the courts generally treat it as a mortgage, for the reason that such construction will be most apt to attain the ends of justice, and prevent fraud and oppression, . . ."

That declaration of the law, as stated by the text writer, was quoted with approval in *Kuhn v. Groll*, 118 Wash. 285, 203 Pac. 44. There, the vendor made a contract for the sale of corporate stock and kept the certificate in his possession. Part of the purchase price was paid, and notes were given for the balance. There was no express agreement as to the purpose of leaving the certificate in the possession of the vendor, other than that it should be retained until the notes were paid. It was there held that the contract was one of

conditional sale. In the course of the opinion it was said:

"We are not unmindful of the argument of counsel for respondents that in this particular case there will result a greater injustice by holding this transaction to be, in legal effect, a pledge rather than a conditional sale, made seemingly because the disposition of this particular case against them may result in a deficiency judgment against them. But that does not argue against the general rule. If they were now insisting upon the return of the $3,000 paid by them upon the purchase price, as pleaded in Groll's affirmative answer, their counsel would probably be invoking this general rule in support of such contention. The force of the rule is not impaired by the mere exigencies of a particular case."

In the case now before us, the roubles and note were not left in the possession of the vendor, but were delivered to an escrow holder. Had they been returned to the appellant, as the last clause in the contract provides, the parties would then be in the same situation as they were in that case where the stock and notes were left with the vendor. It may be admitted that, whether a contract is one of conditional sale or an absolute sale is a matter of intention. In the present case there is no evidence, other than that appearing on the face of the instrument, which would indicate the intention of the parties. The respondent, it is true, in his testimony made some vague reference to the effect that, at the time of the transaction, there was some reference made to conditional sale, but there is nothing in this respect which rises to the dignity of evidence. The case of *Lundberg v. Kitsap County Bank*, 79 Wash. 75, 139 Pac. 769, is not controlling. There the instrument in question was held to be a conditional sale, but it contained an express provision providing for the forfeiture of the payments already made and for a dry kiln, if such should be built upon the property.

[2] As already stated, there is no forfeiture provision in the contract now before us. But, assuming that the contract was a conditional sale, a like result must follow. The roubles with the note were placed in escrow. After the suit was brought, the respondent testified that he with a witness went to the bank which held the agreement, and, in a conversation with one W. Kahlke, who had charge of the foreign exchange department therein and of the escrow agreement and roubles, testified that Kahlke said that the appellant had withdrawn the roubles at the time he withdrew the note and escrow agreement, prior to the institution of the suit. This was denied by Kahlke and he testified that the roubles had at all times been in the bank. There are no other facts or circumstances from which the jury had a right to infer that the roubles had been withdrawn by the appellant, which he, also, denied. If the contract were a conditional sale and the appellant elected to retake the roubles, it may be admitted he would not have a right to maintain the present action. The question upon this phase of the case, then, is whether there was sufficient evidence to take the question as to whether the appellant had made such an election to the jury. If the verdict of the jury can be sustained, it must be by reason of the fact alone that the respondent and another witness testified that Kahlke had made the declaration that the appellant had withdrawn the roubles. Evidence of verbal declarations of the adverse party, where there are no other facts or circumstances corroborating the same, are not sufficient to sustain the verdict of the jury upon a vital issue.

In *Ludberg v. Barghoorn*, 73 Wash. 476, 131 Pac. 1165, recovery was sought of an owner of an automobile for personal injuries caused by its negligent operation while in the possession of another. The defense

was, that the operator of the automobile was using it, at the time of the injury, for purposes of his own, and not for the purpose of the owner. Evidence was offered tending to show admissions on the part of the owner, made shortly after the accident, that the automobile was then being operated by a member of his own family. A challenge to the sufficiency of the evidence was sustained by the trial court, and on the appeal the ruling was sustained, holding that the evidence was not of that substantial character necessary to support an affirmative judgment. In *Jones v. Harris,* 122 Wash. 69, 210 Pac. 22, upon a similar question, that case was cited with approval, the authorities reviewed in detail, and a like conclusion reached.

Under the holding in those cases, the verdict in the present case cannot be sustained. The evidence here was not of a declaration of the adverse party, but of the escrow holder who, in a sense, was the agent of both parties. This being true, there was less evidence in this case, assuming, but not deciding, that the declarations of Kahlke were admissible, than in either of the other two cases referred to. It certainly cannot be that liability can be fixed upon one party by the mere declarations of the escrow holder, who represented both parties.

[3] There is a further contention that the roubles sold were part of a larger quantity and, therefore, no particular ones were specified. But the evidence will not sustain this position. After the escrow agreement was made, by written authority from the respondent the appellant was permitted to withdraw the one hundred and eighty thousand roubles from the bank temporarily, and was, in addition to this, loaned twenty thousand other roubles, which the respondent at that time owned. Thereafter, and within the time fixed, the one hundred and eighty thousand roubles were returned

to the bank, to be held under the escrow agreement, and the twenty thousand were returned to the respondent. Under these facts, it cannot be said that the roubles covered by the agreement were not segregated, and for that reason no title passed.

[4] It is also argued that, since the condition of the agreement was not performed, no title had passed. This is the rule when an executory contract is made and placed in escrow, with the provision that it shall not be delivered until certain condition or conditions are performed. The rule, however, is not applicable to the present case, as this was not an executory contract. The roubles had been sold, part of the purchase price had been paid in cash and the balance by a promissory note. Nothing remained to be done, except the payment of the note. The transaction, in its essence, amounted to nothing more than a sale and the pledge back of the subject of the sale, securing the promissory note for the balance due. The appellant was entitled to a judgment on the note for the amount of the principal and the accrued interest which had not been paid. The motion for judgment notwithstanding the verdict should have been granted.

The judgment will be reversed, and the cause remanded with directions to the superior court to enter a judgment as herein indicated.

TOLMAN, C. J., MITCHELL, MACKINTOSH, and PARKER, JJ., concur.

ON REHEARING.

[En Banc. June 30, 1926.]

PER CURIAM.—After the Departmental opinion in this case was filed the respondents presented a petition for rehearing, which was granted. In the petition and upon reargument, they sought to have reviewed the ruling of the trial court in withdrawing from the jury,

at the conclusion of their testimony, the defense of fraud in inducing the execution of the note and escrow agreement. After this defense was withdrawn from the jury, the case was submitted and a verdict returned in favor of the respondents. Upon appeal, the judgment entered upon the verdict was reversed.

The respondents claim that, since they were not in a position to raise the question at the time the case was first heard upon appeal, they should now be given an opportunity to present it and have it considered. It will be assumed for the purposes of this case only, but not decided, that the question is now properly before us. The ruling, however, of the trial court in withdrawing from the jury the defense of fraud, at the conclusion of the evidence offered by the respondents, was clearly right. The parties were dealing at arms' length and with reference to a commodity which was, at least, of highly speculative value. What the appellant may have said with reference to the value of the roubles and as to what the political, economic and financial conditions of Russia would be, were matters upon which Mr. Colby had no right to rely. He was a man of intelligence and experience and could have ascertained, had he cared to do so, what the value of the roubles at the time of the purchase was.

It follows that the judgment must be as directed in the Departmental opinion.