[No. 20699.  Department One.  January 6, 1928.]

West American Finance Company, *Appellant*, v.
George Finstad, *Respondent*.[1]

[1] Sales (168, 170)—Conditional Sales—Distinguished From
Chattel Mortgages. An instrument purporting to be a "con-
ditional sales" contract is in fact a chattel mortgage, and void
as to a subsequent purchaser in good faith, if lacking an
affidavit of good faith and an acknowledgment, where it con-
tains clauses authorizing the seller upon default to retake and
sell the property, charging all costs and attorney's fees to the
buyer, who shall be liable for any deficiency, and authorizing
the prosecution of concurrent remedies; since a conditional
sales contract may not reserve to the seller two inconsistent
rights, and since the contract treated the property as security
for a debt absolutely due in any event.

Appeal from a judgment of the superior court for
King county, Ronald, J., entered April 14, 1927, upon
granting a nonsuit at the close of plaintiff's case, in
an action on contract, tried to a jury.  Affirmed.

*Cosgrove & Terhune,* for appellant.

*Bogle, Bogle & Gates, R. Kline Hillman, Edward G.
Dobrin,* and *Joseph Nievinski,* for respondent.

Mitchell, J.—An automobile dealer, in considera-
tion of $400 paid and $930.94 to be paid on the install-
ment plan, sold the automobile involved in this action
under a so-called contract of conditional sale, and on
the same day assigned and delivered the contract to
the West American Finance Company, who promptly
filed the contract for record in the auditor's office as a
conditional sale contract.  The contract was signed by
both parties.  Thereafter the vendee delivered the
automobile to the dealer, upon what terms the record
is silent.  Thereafter, the dealer sold and delivered it

[1]Reported in 262 Pac. 636.

to the respondent, George Finstad, in consideration of
a cash payment of $975. He had no knowledge or no-
tice of the prior transaction concerning the automo-
bile, nor was he aware of the filing and recording of
the instrument referred to as a contract of conditional
sale.

There being a default in the terms of the contract
held by the finance company, it brought this action
against Finstad to recover the automobile. Upon the
trial of the case to a jury, a nonsuit was granted at
the close of plaintiff's case, the trial court holding that
the contract assigned to the finance company was, in
legal effect, a chattel mortgage, and lacking an affidavit
of good faith and an acknowledgment, it was void as
to the defendant, a subsequent purchaser for value and
in good faith. The West American Finance Company
has appealed from a judgment dismissing the action.

[1]   The question on the appeal involves the cor-
rectness of the holding of the trial court that the con-
tract must be considered as a chattel mortgage and not
a contract of conditional sale. The determination of
this question depends upon the intention of the parties,
to be gathered from all the terms of the contract, there
not being in the case any evidence other than that ap-
pearing on the face of the instrument to indicate the
intention of the parties.

The instrument is a long one and most of it need not
be set out, in considering it for the purposes of this
case. It is entitled ''Contract of Conditional Sale.'' It
says, ''The undersigned seller hereby sells, and the
undersigned purchaser hereby buys, subject to the
terms and conditions of this contract, the following
property, etc.'' Section 1 provides: ''Title to said prop-
erty shall be and remain in the seller until the said de-
ferred balance shall have been fully paid in cash.''
Section 2 gives the residence of the purchaser as King

county and provides that the automobile shall not be removed out of that county without the written consent of the seller or its assigns. Section 3 says that no assignment of the contract nor any loss, damage, injury or destruction of the property shall release the purchaser from his obligations and liabilities including the satisfaction of all deferred payments. Section 4 provides that the contract shall be assignable by the seller free and clear of all equities, set-offs, counterclaims and defenses of the purchaser against the seller; and not assignable on the part of the purchaser. Section 5 provides that deferred payments becoming due may, upon failure of the purchaser to perform any of the terms of the contract or become insolvent, be declared immediately due. Section 6 provides against promises, representations or warranties not endorsed in writing on the contract. Section 7 provides that the purchaser shall keep the automobile in good condition, free from taxes and liens and shall not use or let it be used for hire or any illegal or improper purpose. Section 8 provides that the proceeds of insurance on the automobile in the event of loss shall be applied to the seller's benefit. Section 9 is as follows:

"Time is declared to be the essence of this contract, and if the purchaser shall fail to perform any of the terms or provisions hereof, the seller or its assigns may, without demand or notice, take immediate possession of said property, including any attachments, equipment or accessories thereto, and for that purpose the seller or its assigns may enter upon the premises wherein said property may be, and remove the same. The seller or its assigns may resell said property so retaken at public or private sale without demand, or notice of any kind, without having such property at the place of sale, and upon such terms and in such manner as the seller, or its assigns, may, in its or their sole discretion determine; the seller or its assigns may purchase at any public or private sale. From the proceeds of any such sale the seller or its assigns shall

deduct all expenses incurred in the retaking, repairing and reselling of said property, and also a reasonable attorney's fee, and the balance shall be applied to the payment on account of the obligations of the purchaser hereunder; any surplus shall be paid to the purchaser; in case the net proceeds of said sale shall be insufficient to discharge the purchaser's obligations hereunder in full, the purchaser will pay any such deficiency with interest at the rate of 7% per annum from such sale until paid upon demand.''

Section 10 is as follows:

''The seller or its assigns shall have the right to enforce one or more remedies hereunder, successively, or concurrently, and such action shall not operate to estop or prevent the seller or its assigns from pursuing any further or other remedies which he may have hereunder, or which he may have by virtue of law, and any repossession or retaking or sale of said property pursuant to the provisions of this contract shall not operate to release the purchaser from the payment of all of said deferred payments until full payment thereof has been made by the purchaser in cash. The remedies accorded to the seller hereunder are cumulative and shall be in addition to any other rights or remedies which the seller may have by virtue of law.''

Section 11 provides that, if the automobile shall be seized under process against the purchaser and if the seller shall make claim for release of the property, the purchaser will pay to the seller a reasonable attorney's fee, to be ''added to the purchase price and shall be secured by this contract.'' Another section provides that, if the contract shall be placed in the hands of an attorney because of default of the purchaser, the purchaser will pay an attorney's fee whether suit be brought or not. There are other provisions of the contract which, in our opinion, have no bearing upon the question here and need not be further referred to.

The fact that the instrument is called a contract of conditional sale is not controlling, for it often happens,

as in *Sayward v. Nunan,* 6 Wash. 87, 32 Pac. 1022, that a writing purporting to be an unconditional and absolute bill of sale is held to be a chattel mortgage. The fact that, by one of the terms of the agreement, the title is to remain in the seller until the purchase price is paid, does not necessarily import that the transaction was a conditional sale. *Chicago R. Equipment Co. v. Merchants' Bank,* 136 U. S. 268. To the same effect, *Heryford v. Davis,* 102 U. S. 235. Nor is the fact that the appellant, by this action, seeks only to recover possession of the property decisive of the case. By section 10 of the contract, it is specifically provided that the retaking or sale of the property shall not operate to release the buyer from the payment of the full purchase price. The contract is to be construed according to the intention of the parties signing it, as deducible from all the terms employed, which, of course, embrace those relating to substantial rights as well as those relating to remedies. Conditional sales are not favored in the law, and

"Where it is doubtful, from the face of an instrument, whether the contract is a conditional sale or a mortgage, the courts generally treat it as a mortgage, for the reason that such construction will be most apt to attain the ends of justice and prevent fraud and oppression." *Low v. Colby,* 137 Wash. 476, 243 Pac. 18.

See, also, *Kuhn v. Groll,* 118 Wash. 285, 203 Pac. 44; *Sayward v. Nunan,* 6 Wash. 87, 32 Pac. 1022.

Sections 9 and 10 of the contract are emphatic and provide in circumstantial detail that the seller may, upon default of the purchaser, retake the property and sell it at public or private sale, at which the seller or its assigns may become the purchaser, charge all costs, including an attorney's fee, and apply the balance on the purchase price, the surplus, if any, to be paid to the purchaser; but in case the net proceeds shall be

insufficient to discharge the purchaser's obligations in full, the purchaser agrees to pay any such deficiency with interest at seven per cent per annum, and that the enforcement of one or more remedies successively or concurrently shall not operate to prevent the seller or its assigns from pursuing other remedies under the terms of the contract or by virtue of law until full payment of the purchase price has been made by the purchaser.

Uniformly, this court has held that, in conditional sales contracts, the seller may retake the goods on default and rescind the sale or he may sue for the price and elect to pass the title to the property to the purchaser, but that he cannot have both remedies. If he chooses one, the other is denied to him. While this rule relates in a way to the matter of remedy, it rests upon the real character of the contract. In *Low v. Colby,* 137 Wash. 476, 243 Pac. 18, which involved a written contract relating to Russian roubles that was held to be a chattel mortgage, it was said:

"In the instrument there is no provision for forfeiture, which is one of the chief characteristics of a conditional sales agreement. If the instrument was intended to be a conditional sale, then, if the appellant elected to retake the roubles as the respondent claims he did, he would have no right to the note. It is well settled that, if the vendor under a conditional sales contract elects to retake the property, that is his sole and only remedy, and he has no right to recover further upon the debt."

Just so in the present case. By the contract the seller forfeits nothing. In case of default on the part of the purchaser, the seller can take the property and still recover the balance due on the purchase price. No provision is made for resuming title to the property in satisfaction of the obligation, but merely for the resumption of possession for the purpose of sale

as in an ordinary foreclosure of a mortgage. *Mc-Gourkey v. Toledo & Ohio R. Co.,* 146 U. S. 536.

There is what appears to be a diversity of opinion on this subject in the different states and jurisdictions. It is accounted for very largely because of the adoption in many of the states of the Uniform Conditional Sales Act, which has not been adopted in this state, or the view, independent of that act, that such contract creates a lien in the nature of security for the payment of debt, the latter being at variance with the holdings in this state and some other states. In the case of *Burroughs Adding Machine Co. v. Wieselberg,* 230 Mich. 13, 203 N. W. 160, the same view is taken of such contracts as that which prevails in this state. In the opinion in that case, the Michigan court pertinently said:

"Our decisions appear to be within the comprehension of Dean Bogart, draftsman of the Uniform Conditional Sales Act, now in force in 29 states, but not in Michigan, for, in mentioning the holdings of this court, he says:

" 'The Michigan courts distinguish between (1) an absolute reservation of title till payment, a transaction which they call a "conditional sale" and in which the seller may retake the goods on default and rescind the sale or may sue for the price and elect to pass the property to the buyer; and (2) a contract whereby the seller purports to reserve title by way of security merely, to enable him to collect the price. The latter transaction is construed to be a chattel mortgage, an absolute sale followed by the creation of a lien in favor of the seller to the amount of the unpaid portion of the price. The theory of the Uniform Act is that the reservation of title in a conditional sale is always "for security merely," and this means of obtaining security should be called a conditional sale. Hence the peculiar Michigan view is inconsistent with the Uniform Act. *Atkinson v. Japink,* (1915) 186 Mich. 335, 152 N. W. 1079; *Young v. Phillips,* (1918) 202 Mich. 480, 168

N. W. 549; Id., 203 Mich. 566, 169 N. W. 822; *Niman v. Story etc., Piano Co.*, (1921) 213 Mich. 397, 181 N. W. 1017.' Uniform Laws Ann. vol. 2A p. 8.''

And in the case immediately following the *Burroughs Adding Machine Co.* case, *Nelson v. Viergiver*, 230 Mich. 38, 203 N. W. 164, the court said:

''A conditional sale contract may reserve to the seller two inconsistent rights. It may give him the election to sue upon the obligation to pay or to retake possession of the property. He cannot, however, do both. If he elects to retake the property, and does so, he cannot recover any part of the contract price by suit. On the other hand, if he brings suit to recover the debt due him, he cannot thereafter assert his right to retake possession. He cannot recover a judgment for the price while the title to the thing sold yet remains in him. If such contracts were drawn so as to make this right of election clear, as was the provision in *Burroughs, etc., Co. v. Wieselberg*, (Mich.) 203 N. W. 160 (handed down herewith), there would be no difficulty in determining the nature of the instrument in this respect. In the contract here under consideration it is provided that suit may be brought and judgments recovered and the title and ownership remain in the seller or his transferor until the judgments are paid. No right of election is provided for. The effect of the enforcement of such a provision is to permit such recovery under execution issued upon the judgment as is possible and to retake the property to secure the deficiency. This may not be done. *Young v. Phillips*, 203 Mich. 566, 169 N. W. 822. The insertion of such a provision carries with it the transfer of the title to the purchaser.''

Here, as in Michigan, we must proceed in accord with the course of the common law in constructing instruments of this nature and not in accord with the Uniform Conditional Sales Act. There are other states that hold the same way, but the decisions need not be set out, and, of course, the courts of other states reach a different conclusion, but because of the differ-

ent theories of the nature of such instruments as declared by statute.

In this case, we may well follow the reasoning in the case of *Heryford v. Davis, supra,* and inquire, what was this agreement but treating the purchaser's promise to pay, at all events, the full price of the property as a debt absolutely due to the vendor? What was it but treating the property as security for the debt? And why stipulate that the surplus over costs and expenses which might be obtained from the sale of the property, after taking it back, beyond what was needed to pay the unpaid part of the debt, should be paid over to the purchaser, if the purchaser was not the owner of the car.

In our opinion the instrument in this case transferred the title to the car to the purchaser and constituted a mortgage back by him to the seller, and not having an acknowledgment and affidavit of good faith attached, as required by the chattel mortgage statutes, was void as to the respondent, a purchaser for value and in good faith.

Affirmed.

MACKINTOSH, C. J., PARKER, and FRENCH, JJ., concur.

TOLMAN, J., dissents.