[No. 28723. Department One. May 13, 1943.]

NATIONAL CASH REGISTER COMPANY, *Respondent*, v.
SEATTLE ASSOCIATION OF CREDIT MEN, *Appellant*.[1]

[1]Reported in 137 P. (2d) 503.

*Patterson & Patterson,* for appellant.

*Wettrick, Flood & O'Brien,* for respondent.

MALLERY, J.—On February 21, 1940, Eba's Inc. purchased two cash registers from respondent, National Cash Register Company. The instrument by which the purchase was evidenced was signed by the buyer and addressed to the seller. The relevant part reads as follows:

"The National Cash Register Co., Dayton, Ohio: Please . . . ship . . . two cash registers . . . numbers 3844400, 3843606 . . . for which undersigned agrees to pay $842.18. . . . Terms: Thirty dollars cash . . . and the following amount to be evidenced by note: $812.18 in 23 monthly payments of thirty-five dollars.

"This order subject to acceptance by the company at Dayton, Ohio. . . . The purchase price shall, at your option, become due and payable upon refusal to accept delivery when tendered, or to execute and deliver the note or to make any payment provided for, and you may sue therefor, thereby vesting the absolute title in the undersigned, or you, if you so elect, may immediately repossess the chattel, and retain as rental all payments made. . . . The chattel shall remain your property until the price is paid in full."

Notes were executed as stated in the instrument and the cash registers were delivered the same day.

The instrument was filed and indexed three days later (on February 24, 1940) by the King county auditor as a conditional sales contract, respondent appearing as vendor and Eba's Inc. as vendee. No satisfaction of the contract appears in the auditor's records.

On June 13, 1940, respondent repossessed one of the cash registers, and on the same date a second instru-

ment was executed with regard to the remaining cash register. This instrument was in general form similar to the first but, inadvertently or otherwise, it was signed "Eba's Motor In Market" by "Earl M. Eba, Pres." "Eba's Motor In Market" was an assumed name under which "Eba's Inc." conducted business, but no certificate for the use of the name was ever filed with the county clerk of King county. This instrument was filed and indexed the same day by the King county auditor, respondent being indexed as vendor and "Eba's Motor In Market" as vendee.

In the first or original instrument of February 21, 1940, respecting both cash registers, the buyer had signed as "Eba's Inc." by "Earl M. Eba, Pres.," and the auditor had indexed the vendee as "Eba's Inc.," the true corporate name. In the second instrument, the purchase price of the remaining cash register is given as $413.85, this figure being itemized as $375 for the cash register, a handling charge of $31.35, and the retail sales tax of $7.50. No satisfaction of this second instrument appears on the records of the auditor. On the day the second instrument was signed and filed, a down payment of $52.50 was made, and "Eba's Motor In Market" executed and delivered to respondent its negotiable promissory note agreeing to pay a balance of $361.35 in monthly installments of $17.50.

On June 29, 1940, "Eba's Inc." made a common-law assignment for the benefit of creditors to Seattle Association of Credit Men, appellant herein, which took possession of, and still retains, the remaining cash register. Appellant represents creditors both prior and subsequent to February 21, 1940.

Respondent brought this action in replevin against appellant and obtained a judgment in its favor. It alleged the execution and filing of the first instrument and the defaults thereunder. No mention was made of the second instrument.

■ Appellant first contends that neither the first nor second instrument is a conditional sales contract but that, together and with the notes accompanying them, they constitute chattel mortgages, which for want of an affidavit of good faith, are invalid as to creditors. It cites the cases of *Lahn & Simmons v. Matzen Woolen Mills,* 147 Wash. 560, 266 Pac. 697, and *West American Finance Co. v. Finstad,* 146 Wash. 315, 262 Pac. 636. The agreements in each of those cases, however, were clearly not conditional sales contracts and each is readily distinguishable from the agreement in the instant case. The vendor in each of those cases had not only the right to repossess but he could sell the article thus repossessed, and, after crediting the proceeds to the vendee's account, he could hold the vendee for the deficiency. This right alone was sufficient to brand the contract in each of those cases a mortgage. We cannot agree with appellant's contention that the expression in the agreement *"thereby vesting the absolute title in the undersigned"* renders it uncertain as to where the title was intended to remain until the cash registers were paid for. The agreement clearly states, "the chattel shall remain your property until the price is paid in full."

Upon principle, as well as upon authority of the case of *Seaboard Securities Co., Inc. v. Berg,* 170 Wash. 681, 17 P. (2d) 646, 92 A. L. R. 297, the agreement in the instant case is a conditional sales contract. The vendor is given an unambiguous election to pursue one and only one of the two remedies therein provided: (1) He may sue for the stipulated payment, in which event title which theretofore had been retained or reserved in the vendor passes unconditionally, or as the contract reads, "absolutely to the vendee"; or (2), if the other election is pursued, the vendor could repossess, in which event the contract gives him but one right, the right to retain the payment thus far received, not the right to collect the remainder.

■  Appellant, however, further contends that the execution of the second contract under date of June 13, 1940, nearly four months after delivery, constituted a termination, *or a novation,* of the first contract.  Appellant then, upon this assumption, finds that the second contract and its filing and indexing do not sufficiently comply with Rem. Rev. Stat. (Sup), § 3790 [P. C. § 9767], the pertinent part of which statute reads as follows:

*"Contracts to be filed, when.*  That all conditional sales of personal property, or leases thereof, containing a conditional right to purchase, where the property is placed in the possession of the vendee, *shall be absolute as to all bona fide purchasers, pledgees, mortgagees, encumbrancers and subsequent creditors, whether* or not such creditors have or claim a lien upon such property, *unless within ten days* after the taking of possession by the vendee, a memorandum of such sale, stating its terms and conditions, . . . and signed by the vendor and vendee, shall be filed in the auditor's office of the county, wherein, at the date of the vendee's taking possession of the property, the vendee resides."   (Italics ours.)

If any of the creditors represented by appellant had, before or after advancing the credit or at any time after February 24, 1940, examined the auditor's record, he would have found the first contract properly signed, filed, and indexed, and unsatisfied.  The second contract was not properly signed by the vendee, but, if any creditor, because of this, had failed to find the auditor's record of it, he nevertheless would have found the record of the first unsatisfied contract.  If he had found both contracts, he would not have been misled.  The notice of respondent's claim of title would have remained clear.

Had separate contracts been executed for each of the two cash registers in the first instance, instead of one for both, no one could complain if respondent had repossessed one and left the other.  It is significant

that, when the second instrument was executed and one of the two cash registers repossessed, on June 10, 1940, the debits and credits arranged between the parties by virtue of the return of the machine were identical with the obligations imposed by the terms of the original conditional sale of February 21st. There is no suggestion of any attempt to overreach the vendee or deceive any creditor.

So far as the parties to the contract were concerned, no one can contend but that they intended and supposed that the title to the machine remained at all times in respondent, and that the repossession of the first cash register had no effect upon the title to the other. There was no actual change of possession of the remaining cash register. The second contract was, in fact, simply a memorandum recording a meeting of minds and was only the salesman's way of showing that the vendee would be held only for the price of the one machine retained. It evidences no new or different terms and serves only to evidence obligations identical in all respects with those set forth in the original agreement.

Appellant's last contention is that "the respondent, having relied in its complaint on the first conditional sales contract, may not assert any rights under the second contract." It is true that the complaint referred only to the first contract, but the facts are fully set forth in the answer and the case was tried upon a stipulated written statement of facts. Any insufficiency in the complaint was apparently cured by later pleadings. *Rattelmiller v. Stone,* 28 Wash. 104, 68 Pac. 168; *Reed v. National Grocery Co.,* 136 Wash. 7, 238 Pac. 990.

There being no necessary inconsistency between the instruments, there is no occasion to require an election.

The judgment is affirmed.

SIMPSON, C. J., MILLARD, STEINERT, and JEFFERS, JJ., concur.