GEORGE E. MITCHELL & another *vs.* P. N. LE CLAIR.

Suffolk.   December 3, 1895. — February 28, 1896.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Sale — Passing of Title —Vendor's Lien — Finding.*

If the vendor, upon receipt of the vendee's acceptance of an offer to sell goods at a certain price for cash, weighs the goods, sets them apart and marks them for the purpose of designating them as the vendee's property, and at once sends the vendee a bill of them marked " Cash on demand," the sale is completed, and the title passes, subject to the vendor's lien for the price.

If the vendor, upon receipt of the vendee's acceptance of an offer to sell sixty tubs of butter of a certain quality, appropriates to the vendee sixty tubs as butter of the quality called for, and sends the vendee a bill giving the separate weight and tare of each tub, and afterwards shipments are made from time to time of forty tubs, which are accepted and paid for without objection by the vendee, who directs the shipping to him of the remaining twenty tubs, which is not done on account of a dispute between the parties as to the terms of payment, in an action for the price, a finding that the butter answered the requirements of the contract will be warranted.

CONTRACT, upon an account annexed, to recover the price of sixty tubs of butter sold by the plaintiffs to the defendant. Trial in the Superior Court, without a jury, before *Richardson*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiffs are wholesale butter dealers in Boston, and the defendant is a grocer in Southbridge.

On September 26, 1893, the defendant visited the store of the plaintiffs, inquiring the price of butter.   The plaintiffs offered to sell to the defendant sixty tubs of butter, of the same kind and quality as that previously bought by the defendant from the plaintiffs, for twenty-seven cents per pound, cash, provided he accepted before twelve o'clock on the following day.   The defendant before twelve o'clock on the following day, by telegram, accepted the offer.   The plaintiffs testified that, immediately upon the acceptance of the offer, they went to the public storage warehouse, where they had large quantities of butter stored, and picked out sixty tubs of butter, weighed it, set it one side, and marked each tub for the purpose of designating it as the butter of the defendant, and at once sent a bill of all of it to the de-

fendant, marked "Cash on demand." The defendant had no notice whatever of this selection, setting aside, and marking of sixty tubs of butter, except the receipt of the bill. There was no evidence introduced to show that the kind or quality of the butter thus set aside was or was not of a similar grade or quality as that sold the defendant before. No objection was ever made by the defendant to paying for any of it on the ground that it was not of the quality or kind of butter purchased. Afterwards, the defendant at different times directed shipments to be made by the plaintiffs of the butter so bought by him, and the same was shipped, to the amount of forty tubs, and accepted without any objection, and paid for. The plaintiffs testified that these forty tubs were taken from the lot set aside as above stated; but of this fact the defendant had no knowledge, except from the bill sent at the time of purchase, which enumerated the separate weight and tare of each tub of butter.

In March, 1894, the defendant directed the plaintiffs to ship to him the remaining twenty tubs of butter. This the plaintiffs refused to do until they had first received the pay for them, claiming that the sale was for cash on demand, and demands for payment having been previously made. The defendant did not understand these to be the terms; but did understand that he was to receive delivery of the butter, and pay for it during the three months succeeding September 26, 1893. The price of butter declined in the market soon after the agreement was made. The plaintiffs still have the butter on storage, subject to the order of the defendant when he pays for it. The defendant asked the judge to rule "that the selection, setting aside, and marking of the sixty tubs, as testified to by the plaintiffs, could not be considered a delivery, the defendant neither having knowledge of such action nor assenting thereto, expressly or by implication"; and "that the plaintiffs had failed to make out their case, in that there was no evidence that the butter selected, set aside, and marked, as aforesaid, was of the kind and quality ordered."

The judge refused to rule as requested; found that, by the agreement, the defendant was to take all the sixty tubs, and pay for it within three months from September 26, 1893; and that

the plaintiffs made several demands upon the defendant, before and after the expiration of the three months, to take the rest of the butter and pay for it; and found for the plaintiffs. The defendant alleged exceptions.

*G. H. Towle*, for the defendant.

*D. D. Corcoran*, for the plaintiffs.

KNOWLTON, J.    The principal question in this case is whether there was a sufficient delivery of the butter to pass the title as between the parties.    There is no dispute that there was a good contract of sale, and no question arises under the statute of frauds.

The defendant accepted by telegram the plaintiffs' offer to sell him sixty tubs of butter of a specified quality at twenty-seven cents per pound.    The plaintiffs had in their storehouse a large quantity of butter.    Upon the receipt of the defendant's telegram accepting their offer, they were impliedly authorized, as the defendant's agents, to set apart and appropriate to him the goods called for by the contract.    This they immediately did, weighing the butter, setting it apart, and marking each tub for the purpose of designating it as the defendant's property.    They then at once sent him a bill of all of it, marked " Cash on demand." This completed the sale and passed the title.    *Arnold* v. *Delano*, 4 Cush. 33, 38.    *Ropes* v. *Lane*, 9 Allen, 502, 510.    *Merchants' National Bank* v. *Bangs*, 102 Mass. 291, 295.    *Marble* v. *Moore*, 102 Mass. 443.    *Morse* v. *Sherman*, 106 Mass. 430.    *Safford* v. *McDonough*, 120 Mass. 290.    *Gilmour* v. *Supple*, 11 Moore P. C. 551, 566.    *Tarling* v. *Baxter*, 6 B. & C. 360.    Benjamin, Sales, (6th Am. ed.) §§ 353, 354, 357, and cases cited in the note.

If the contract is not in such form as to be binding under the statute of frauds, such an appropriation does not constitute an acceptance under that statute, nor does it change the possession, and thereby deprive the vendor of his lien for the price.    *Safford* v. *McDonough, ubi supra.*    But if the vendee in such a case afterwards refuses to take the goods and pay for them, the vendor may recover the price if he keeps them in readiness for delivery to the purchaser.    Under a contract of sale, when the goods have been so appropriated and set apart, the vendor has done that which by the terms of the agreement makes the whole consideration payable; and so long as he remains ready to do

whatever else is to be done to give the vendee the benefit of his purchase, he is entitled to receive the agreed price without deduction on account of his retention of his lien upon the property. *Morse* v. *Sherman,* 106 Mass. 430. *Putnam* v. *Glidden,* 159 Mass. 47. *White* v. *Solomon,* 164 Mass. 516.

There was sufficient evidence to warrant the judge in finding that the butter answered the requirements of the contract. The plaintiffs appropriated it to the defendant as butter of the quality called for. Their conduct then and afterwards was equivalent to a declaration that it conformed to the agreement of the parties. Afterwards shipments were made from time to time of a part of it, amounting to forty tubs in all, which were accepted and paid for by the defendant without objection. This was an admission by the defendant that the quality of the forty tubs was such as he expected. The bill sent to the defendant in the first place gave the separate weight and tare of each tub of butter. The defendant directed the shipping to him of the remaining twenty tubs, and the only dispute between the parties at that time was in regard to the terms of payment, the plaintiffs asserting that the property was to be paid for on demand, before parting with the possession, and the defendant contending that he was entitled to receive it and to have three months from the time of sale in which to make payment. While these facts do not make it certain that the twenty tubs remaining in the possession of the plaintiffs were of good quality, they warrant an inference in favor of the plaintiffs' contention, in the absence of anything to show the contrary. The last instruction requested was therefore rightly refused.

*Exceptions overruled.*