# Lam v. White.

(Decided September 30, 1924.)

## Appeal from Jefferson Circuit Court (Common Pleas, Second Division).

1.  Sales—Remedies of Seller when Buyer Declines to Accept and Pay for Property Stated.—Generally, when buyer declines to accept and pay for specific property purchased, seller may retain property for buyer and sue him for price, or may sell it and recover difference between contract price and price obtained on resale, or may keep property as his own and recover difference between market value and contract price.

2.  Sales—Executory and Executed Contract of Sale Defined.—"Executed contract" is one in which title has passed, and "executory contract" is one in which title has not passed, but is to pass at some time in future upon performance of certain additional acts of seller.

3.  Sales—Executory Contract May Become Executed Contract.—Contract of sale, executory when made, may by its terms become executed or partly executed before breach.

4.  Sales—Intention of Parties Determines Whether Contract is Executory or Executed.—In determining whether contract is executed or executory, true test is as to intention of parties, and if agreement fixes time, title shall pass; this controls.

5.  Corporations—Contract for Sale of Stock Held Executed so that Seller Entitled to Price on Refusal of Buyer to Receive.—Where price of corporate stock was agreed upon, and date of payment fixed, and stock was in deliverable state, and nothing remained to be done by seller except to receive purchase money and deliver certificate, held that contract became executed, and seller was entitled to recover price though buyer refused to accept stock.

6.  Corporations—Offer of Stock Held Tender and Refusal Waiver Thereof.—In action for contract price of stock, testimony of plaintiff that he tendered certificate of stock, and defendant refused to accept it, if true, would constitute joint tender by plaintiff and waiver of tender by defendant.

7.  Corporations—Failure to Instruct on Question of Ability of Seller of Stock to Deliver Held Proper.—In action for price of stock, where it was shown plaintiff held stock certificate, and it was filed and tendered with petition, thus showing plaintiff's ability to comply with his part of contract, failure to instruct on latter point was not error.

ERNEST WOODWARD and R. P. HOBSON for appellant.

MILLER & MILLER and DUFFIN, RAY, VANCE & DUFFIN for appellee.

Opinion of the Court by Judge McCandless—Affirming.

In an action at law, C. W. White recovered a judgment of $5,000.00 against J. W. Lam, as the full contract price of certain mining stock, which it was alleged Lam had purchased of White. Defendant appeals.

Lam, White, Henry Miller and ——— Maxey each owned $5,000.00 stock in the Manchester Coal Company. Lam was a man of property and had advanced the payment on the stock for Miller and Maxey. The company had been in operation about a year when White became dissatisfied and decided to sell his stock. There was an understanding between the parties that no one would sell his stock without first giving an opportunity to the other stockholders of purchasing it.

White claims that on the 13th day of May, 1919, he told Lam, he was going to dispose of his holding and that Lam said, "Mr. White, I don't like to see you sell your stock at this time." I said, "I am going to dispose of it; I think I can trade it for some property up on the point; I am going to dispose of my stock; I will give you fair warning now." He said, "You will remember our agreement, you could not dispose of this stock without letting us have a chance to buy it." I said, "I am going to give you a chance, and I am giving you a chance now to buy it." He said to me, "If you are determined to sell it or part with it or get shet of it, I will take your stock myself if you will give me four months to pay for it." I said, "That is satisfactory, Mr. Lam."

He further testifies that the price was fixed at $5,000.00; that they agreed to incorporate this agreement in the minutes of a stockholders' meeting to be held that afternoon, and did so. The minutes of that meeting were introduced in evidence and contain statements substantially similar to those above set out.

Henry Miller testifies that before the meeting was held Lam told him he had purchased White's stock at par, and this is to some extent corroborated by other witnesses, who show that the matter was incorporated in the minutes, which were signed by Miller as president, and White as secretary, after being read in Lam's presence.

On the 30th of August, 1919, White wrote Lam in reference to the matter, suggesting that he would send the stock certificate through the bank on the 13th of September, and for Lam to take it up on the payment of the pur-

chase price. He testifies that Lam did not answer by letter, but called upon him in person and informed him that he could not pay for the stock at that time, but would take it later. Afterward he tendered the stock and Lam declined to accept it or pay for it.

Lam denied all of these statements. The pleadings correspond to the issues of fact, the certificate of stock properly endorsed being filed and tendered with the petition.

The general rule is, that when a buyer of specific personal property declines to accept and pay for the property purchased, the seller has the choice of three remedies; First, he may retain the property for the buyer, and sue him for the contract price; second, he may sell the property and recover the difference between the contract price and the price obtained on the resale; or, third, he may keep the property as his own and recover the difference between the market value at the time and place of delivery and the contract price. 24 R. C. L., Sales, section 352; Cook v. Brandeis, 3 Met. 555; Bell v. Offutt, 10 Bush 632; Zinsmeister & Bros. v. Canning Co., 145 Ky. 25.

Appellant concedes the correctness of the above rules, but seeks to restrict the first remedy to executed contracts, and insists that this is an executory contract unaccompanied by delivery, by which no title passed, and therefore the measure of damage is the difference between the market value and the contract price, and that in no event will a suit lie for the full purchase price unless the title has passed, or there has been an unequivocal tender, and that both of these factors are absent in this case.

Manifestly the seller cannot retain ownership, and also recover the full purchase price, hence if the title has not passed his recovery is limited to the difference between the sale price and the market value. Fairbanks-Morse Co. v. Heltsley, 135 Ky. 400; Blish Milling Co. v. Deatheridge, 155 Ky. 319; Webber v. Minor, 6 Bush 463; Wells v. Malley, 6 Ky. Law. Rep. 77; Barney v. Jolly Hoop Co., 172 Ky. 99.

On the other hand, if the title has passed, and the seller has performed his part of the contract, all of the authorities agree that he may retain the property for the buyer and recover the contract price; hence the status of the title is a controlling factor in determining the buyer's right of an election of remedies.

An executed contract may be defined as one in which title has passed, and an executory contract as one in which title has not passed but is to pass at some time in the future upon the performance of certain additional acts of the seller. Perhaps this definition arbitrarily applied may become confusing in dealing with executory contracts, as a contract, executory when made, may by its term become executed or partly executed before its breach. For instance, in Mitchell-Taylor Tie Co. v. Whittaker, 158 Ky. 651, a contract, executory when made, and which was breached after partial execution, was construed to authorize a recovery of the contract price on the executed part, and damages only for the executory portion.

It would seem the true test is the intention of the parties. If in their agreement they fix the time the title shall pass, this controls. If such time is not so fixed, the intention of the parties in relation thereto may be gathered by well understood rules of construction, as:

> "It is a well settled principle of law that where there is a contract for the sale of personal property in a deliverable state, but the seller is bound to weigh, measure, test or do some other act or thing with reference to the property for the purpose of ascertaining the price, the property or the title does not pass until such act or thing is done. But it is otherwise where nothing remains to be done by the seller, and it appears that the parties intended that the title to the property should pass immediately, and this is true, though it is subsequently to be weighed or measured in order to ascertain the total amount of the price," Hagins, &c. v. Combs, &c., 102 Ky. 167; Frazier & Co. v. Owensboro Stave & Barrel Co., 162 Ky. 301.

> "When the terms of the contract of sale have been definitely agreed upon and the goods have been specifically ascertained, and nothing remains to be done by the seller except to deliver the goods, the effect of the contract, as between the parties thereto, will, unless a contrary intention appears, be to vest the title to the property immediately in the purchaser, even though the goods have not yet been delivered or paid for. The purchaser cannot, indeed, take the goods away until he has paid for them, unless a term of credit has been given, but the title, and

therefore the risk of the goods, will be in him, and the seller may have the remedies for the price." Meacham on Sales, section 483.

"Following the general rule as laid down in the preceding section more fully into details, it is to be observed that the title to the goods may often, as between the parties, pass, though the goods have not yet been delivered. Assuming that the statute of frauds is not involved or has been satisfied, and that the rights of subsequent purchasers or creditors are not concerned, it is abundantly settled that if the goods are fully identified, appropriated to the contract and are in condition for delivery, and if the terms of the contract are agreed upon, the title will, unless a contrary intention appears, pass at once upon the completion of the contract, even though the goods are not delivered, or, as will be seen in a later section, notwithstanding that the price has not yet been paid. . . . " Ibid, section 485.

The plaintiff's evidence is to the effect that there was a contract for the sale of specific personal property; the price was agreed upon, and the date of payment fixed; the property was in a deliverable state and nothing remained to be done by the seller except to receive the purchase money and deliver the certificate. This he retained for the buyer.

If this evidence is true, under the above rules it would evince an intention for the title to pass. So construed the contract became executed, and under any view of the case the title would pass and the seller was entitled to recover the contract price. We deem it unnecessary to discuss the question of tender as appellee testified he tendred appellant the certificate of stock, and the latter refused to accept it. If a tender was necessary, such action, if true, would constitute both a tender by appellee and waiver of tender by appellant. All of the above questions of fact were submitted to the jury under appropriate instructions.

Further, it was shown that appellee held the stock certificate and it was filed and tendered with the petition, thus showing plaintiff's ability to comply with his part of the contract, hence a failure to instruct the jury on the latter point was not error.

Perceiving no error, judgment is affirmed.