[No. 25094.   Department One.   October 2, 1934.]

C. J. ROCKWOOD, *as Receiver, Appellant,* v. JOSHUA
GREEN *et al., Respondents.*[1]

*Charles T. Peterson* and *MacMahon & Poe* (*M. B.
Mitchell,* of counsel), for appellant.

*Philip D. Macbride* and *George W. Williams,* for re-
spondents.

MITCHELL, J.—This is an appeal from a judgment
dismissing three actions, one against each of the three
defendants, and giving the defendants judgment on
their cross-complaints. The pleadings in the respec-
tive cases are alike, except as to names and amounts.
The same questions of law are involved, and the facts
are substantially similar in all of the cases. The ac-
tions were consolidated for trial, and, by stipulation,
have been consolidated for the purpose of the appeal.

[1]Reported in 36 P. (2d) 61.

The actions arose out of a sale by the defendants of capital stock in the Puget Sound Navigation Company, a corporation, to the W. B. Foshay Company, a corporation. The theory of the actions is that the stock was sold under an executory contract which at no time became executed, and that defendants repudiated and refused to perform the contract, whereupon plaintiff became entitled to recover back payments already made. On the contrary, the defendants contend, and the trial court found, that the contracts were executed, whereby title to the stock passed to the W. B. Foshay Company, who pledged the stock back to secure the payment of the purchase price or the remaining portion of it. Further, each of the respondents cross-complained and demanded foreclosure of the lien of the pledge in his favor. Before the actions were brought, the W. B. Foshay Company became insolvent, resulting in the appointment of a receiver, who brought the actions. ·

The plaintiff proposed findings of fact and conclusions of law in its favor, all of which were refused by the trial court. Findings of fact, conclusions of law and judgment were entered in favor of the defendants. The plaintiff has appealed.

The assignments of error consist of two groups, one being predicated upon the refusal of the court to sign findings proposed by the plaintiff, and the other upon making and entering findings in favor of the respondents, upon which latter findings judgment was entered.

The pertinent and essential findings made and entered by the trial court are,

(1)  That the W. B. Foshay Company is a corporation.

(2)  ''That on or about the 24th day of April, 1929, said W. B. Foshay Company as purchaser agreed to purchase from the defendants Fourteen Hundred

Ninety (1490) shares of the capital stock of the Puget Sound Navigation Company, a corporation, in the following amounts:

"Joshua Green, Six Hundred Ninety (690) shares;
"C. H. J. Stoltenberg, Six Hundred (600) shares;
"Wm. E. Mitchell, Two Hundred (200) shares.

That the agreed purchase price of said stock was Ninety-five ($95) Dollars per share, and the W. B. Foshay Company agreed to pay the defendants said amounts in the following manner: Fourteen ($14) Dollars per share in cash, and Two and 25/100 ($2.25) Dollars per share per month; deferred payments to bear interest at the rate of six per cent (6%) per annum, and the entire purchase price to be paid on or before thirty-six (36) months."

(3) "It was agreed between the W. B. Foshay Company and the defendants that said stock should be delivered to the Peoples Bank and Trust Company of Seattle, and upon payment of said sum of Fourteen ($14) Dollars per share should be transferred upon the books of the Puget Sound Navigation Company to the W. B. Foshay Company, who would thereafter be entitled to all dividends and rights of ownership of said stock. That it was agreed that after transfer stock powers should be attached to the stock certificates and that the stock should be held by said bank as collateral to secure the payment of the several amounts owing to the defendants. It was agreed that all of said stock should be held by said bank as security until a margin of twenty-five per cent (25%) of the purchase price had been built up through said monthly payments, and that said margin should be maintained for the benefit of the defendants until the whole of the purchase price was paid in full; that after the said twenty-five per cent of the purchase price had been paid to create such margin, the bank should release from the stock held as collateral such number of shares as the payments made from time to time would pay for at Seventy-one and 25/100 ($71.25) Dollars per share, being the remaining seventy-five per cent (75%) owing the defendants after the twenty-five per cent margin."

(4) "That on or about the 10th day of May, 1929, the W. B. Foshay Company paid the sum of Fourteen ($14) Dollars per share, and that thereupon the defendants delivered their stock to the said bank, and that pursuant to the agreement and in accordance with the directions of said W. B. Foshay Company to said bank, all of said stock (except the stock standing in the name of William E. Mitchell) was transferred to the W. B. Foshay Company, said transfer being effected upon the stock books of the Puget Sound Navigation Company; that stock powers executed by the W. B. Foshay Company were attached to all of said shares of stock. In regard to the two hundred shares standing in the name of the defendant Mitchell, it was agreed by the W. B. Foshay Company and the defendants that the transfer be delayed upon the condition that any dividend declared be transmitted to the W. B. Foshay Company, and that the defendant Green indemnify said company against any loss by reason of said transfer being delayed, and upon the further condition that transfer of said shares might be had by the said Foshay Company at any time upon demand. Except as to deferring transfer upon the books, said stock was sold, delivered and held as collateral under the same conditions as the stock sold by the other defendants."

(5) "That the W. B. Foshay Company paid to the defendants through said bank during each of the months of June, July, August and September, 1929, sums upon the principal owing to the defendants equal to Two and 25/100 ($2.25) Dollars per share. That interest at the rate of Six per cent (6%) upon the unpaid balance was paid up to September 15th, 1929. That the W. B. Foshay Company wholly failed and refused to make any payment in October, 1929, and that no payment whatsoever, of principal or interest, has ever been made subsequent to said payment in September, 1929."

(6) "That on November 1st, 1929, Joseph Chapman was appointed receiver of the W. B. Foshay Company in the District Court of the United States for the District of Minnesota. That on November 5th, 1929, the defendants delivered to the Peoples Bank and Trust

Company, and mailed to the W. B. Foshay Company, a notice of default and demand for delivery of the stock. That on November 8th, 1929, Joseph Chapman was appointed and qualified as ancillary receiver in the United States District Court for the Western District of Washington, Northern Division. That in response to said notice, the receiver protested to the bank against any delivery of stock being made to the defendants, and on November 14th, 1929, instituted an action in equity, cause Number 707 in the said United States District Court, against the Peoples Bank and Trust Company and the defendants herein, alleging in substance that a contract of purchase for said stock was in full force and effect and praying that said bank be enjoined from delivering the stock to the defendants in order that the receiver might determine during the ensuing six months whether said contract should be adopted by the receiver and carried out by him."

(7) That the Peoples Bank and Trust Company retained possession of all of said stock, and still holds the same, and the title to said stock remains in the W. B. Foshay Company. That plaintiff dismissed its action in the United States district court.

(9) Recites the amount still due from W. B. Foshay Company to each of the respondents upon which the respondents have liens upon the stock held by the bank.

The court entered conclusions of law that the agreement was executed and performed by delivery of the stock and transfer of the title to the W. B. Foshay Company and by it pledged back to secure the payment of the balance due to the vendors at the time of the transfer, and that the vendors were entitled to a first lien on the stock held by the bank and for their costs of suit. Judgment was entered accordingly.

The case is almost wholly one of facts, with the understanding, as stated by the appellant, that the *intention* of the parties in making the contract is the controlling element in determining whether the transac-

tion was an executed or executory contract of sale. The question of the intention of the parties is to be determined, not from a technical reading of parts of the pleadings, considered in connection with only a detached portion of the evidence, but upon a just and fair construction of all the pleadings and a consideration of all the evidence in the case. The proof consists mostly of written evidence, and the appellant contends that the court erroneously admitted certain oral evidence of conversations between the parties occurring prior to the written contract, and that the subsequent writing between the parties alone constitutes the agreement between the parties. But, in our opinion, whether viewed with or without evidence of such conversations, the result is the same in this case.

The fact that the stock should be, and was, delivered to the bank, to which, according to understanding, the W. B. Foshay Company gave instructions that, upon partial payment by it of fourteen dollars per share (which was paid in cash), the stock should be, and was, transferred upon the books of the Puget Sound Navigation Company to and in the name of W. B. Foshay Company; that W. B. Foshay Company should thereafter be entitled to all dividends and rights of ownership of the stock, and that the stock thus re-issued should be held by the bank as collateral for the balance due on the purchase price, all of which was established by a clear preponderance of the evidence, constitutes convincing evidence that the transaction was a completed, executed contract, and that it was so intended by the parties.

The uniform sales act, Rem. Rev. Stat., § 5836-19 [P. C., § 6227-19], reads as follows:

"Rules for ascertaining intention. Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at

which the property in the goods is to pass to the buyer:

"Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed."

A similar statute has been enacted in many of the states. It is practically a restatement of the common law. Some of the authorities to that effect, and the reasoning in which is in point, are:

*Collins v. Oliver*, 299 Pa. 372, 149 Atl. 647. In that case, the agreement was that the defendants were the owners of one hundred forty-five barrels of whiskey stored in a bonded warehouse, holding certificates of a distilling company therefor; the defendants had agreed to sell and dispose of the whiskey to the plaintiff for $3.50 per gallon, the whiskey to be paid for five hundred dollars in cash on execution of the agreement and within thirty days thereafter the further sum of $5,590, which two sums represented twenty-five per cent of the entire purchase price. As each certificate was surrendered and the liquor represented by the certificates taken from bond, plaintiff agreed to pay in full in cash the price of $3.50 per gallon for each gallon until the entire amount had been paid. The purchaser further agreed to pay storage and other charges and interest at the rate of six per cent upon unpaid balances, the certificates to remain in possession and control of the sellers until the liquor represented by the certificates had been fully paid for, together with all charges.

The lower court held the transaction to be an option, but the supreme court, in reversing the judgment, said:

"The contract was a sale. It contains no language which warrants the conclusion that what was to be

accomplished by it was to give an option or that it was other than an actual sale. The vendors 'agreed to sell and convey and dispose of' the whiskey to Collins for the price named and he covenanted that it was 'to be paid for' by him 'as hereinafter set forth.' The two payments actually made 'represent twenty-five per cent (25%) of the entire purchase price.' After January 1, 1922, Collins was to pay interest on the unpaid balance of the 'purchase price.' The Sales Act of May 19, 1915, . . . provides: 'Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred;' and section 19 states as a rule for determining that intent, 'Unless a different intention appears . . . where it is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment or the time of delivery, or both, be postponed.' This codifies our decisions prior to the act: 'When the terms of sale are agreed upon, and the bargain is struck, and everything the seller has to do with the goods is complete, the contract of sale becomes absolute as between the parties without actual payment or delivery, and the property, and the risk of accident to the goods, vests in the buyer' [citations]. The absolute obligation to pay interest on the purchase price unpaid, negatives the idea that a mere option for future purchase was intended, . . . As all other elements point to a sale, the retention of the control of the warehouse certificates was solely to secure the payment of the price, and did not in any way affect the change of title. In the light of these factors, we conclude that the effect of the contract was to vest the whiskey in Collins.''

So, also, the case of *Bellows v. McKenzie,* 212 Mass. 601, 99 N. E. 470. It involved the sale of shares of stock in a mining corporation. The facts, tersely stated in the syllabus [99 N. E. 470], were:

''That defendants' intestate gave plaintiffs an order for a 'trustee's receipt for 500 shares of the U. Com-

pany at $4 a share,' paying $200 on account and agreeing to pay the balance in 6 and 12 months, and that subsequently plaintiffs procured the receipt or certificate in intestate's name as owner and deposited the same with a trust company, to be delivered to intestate on payment of the balance of the price. . . . "

Deciding the case, the court said:

"It would appear from the record that the parties intended the title of the trustee's certificate to pass, and that the plaintiffs had done all they had to do in order to divest themselves of the property in the stock and to effect a complete transfer thereof to Robertson. The trustee's certificate was appropriated to the defendants' intestate, and he could obtain actual possession at any time upon payment of the balance of the price. Here could be found at least a completed bargain and sale, with transfer of title; and upon the buyer's refusal to pay, the seller was entitled to recover the purchase price, notwithstanding his retention of a lien therefor. *Thompson v. Alger,* 12 Met. 428. *Frazier v. Simmons,* 139 Mass. 531 [2 N. E. 112], *Mitchell v. Le Clair,* 165 Mass. 308 [43 N. E. 117]. *Obery v. Lander,* 179 Mass. 125 [60 N. E. 378]."

. Also, the case of *McMillan v. Batten,* 52 Ore. 218, 96 Pac. 675. In that case, the plaintiffs agreed to sell to defendants twenty shares of stock as an entirety for twenty-five hundred dollars, ten shares to be delivered and paid for immediately and ten shares to be delivered to a bank and paid for within thirty days. The contract also stated that it was mutually understood that dividends on the latter shares should go to the purchasers with the original ten shares and as a part thereof, and the parties also agreed to carry out the provisions of the contract on their respective parts to be performed. It was held that the contract was not a mere option on the defendants' part to purchase the deposited shares, but that it was a mutual contract of

sale which became executed upon plaintiffs' part on delivery of such shares of stock to the bank.

Upon principle, the case of *Low v. Colby,* 137 Wash. 476, 243 Pac. 18, 247 Pac. 475, is in point. In that case, 180,000 Russian roubles were sold and paid for, part cash and the balance by a promissory note. The roubles and the note were placed in escrow, to be held until the note was paid. The principal question in the case was whether the escrow agreement evidenced a conditional sale or an absolute sale, with a pledge of the roubles for the payment of the note. It was held to be a completed sale, with the pledge back of the roubles as security for the payment of the note. Such, generally, is the holding if the case is a doubtful one. The court quoted, with approval, 24 R. C. L. 446, as follows:

"Conditional sales are not favored in law, and where it is doubtful from the face of the instrument whether the contract is a conditional sale or a mortgage, the courts generally treat it as a mortgage, for the reason that such construction will be most apt to attain the ends of justice, and prevent fraud and oppression, . . . "

Then, upon citing and discussing another case involving the sale of stock, the particular facts of which showed that it was a conditional sale, this court, continuing, said:

"In the case now before us, the roubles and note were not left in the possession of the vendor, but were delivered to an escrow holder. Had they been returned to the appellant, as the last clause in the contract provides, the parties would then be in the same situation as they were in that case where the stock and notes were left with the vendor. It may be admitted that, whether a contract is one of conditional sale or an absolute sale is a matter of intention. In the present case there is no evidence, other than that appearing on the face of the instrument, which would indi-

cate the intention of the parties. The respondent, it is true, in his testimony made some vague reference to the effect that, at the time of the transaction, there was some reference made to conditional sale, but there is nothing in this respect which rises to the dignity of evidence. The case of *Lundberg v. Kitsap County Bank*, 79 Wash. 75, 139 Pac. 769, is not controlling. There the instrument in question was held to be a conditional sale, but it contained an express provision providing for the forfeiture of the payments already made and for a dry kiln, if such should be built upon the property.''

Other cases to the same effect are: *Lam v. White*, 204 Ky. 557, 264 S. W. 1113; *Botsford v. Heney*, 12 Cal. App. 380, 107 Pac. 593.

Holding, as we do, that the contract in this case was an executed sale, further contentions and arguments on the part of the appellant, upon its theory that the sale was an executory one, need not be further considered or discussed.

Judgment affirmed.

BEALS, C. J., STEINERT, MILLARD, and MAIN, JJ., concur.