**HARLAN NATIONAL BANK, Appellant,**

v.

**CARBON GLOW COAL COMPANY,**
Appellee.

Court of Appeals of Kentucky.
Jan. 20, 1956.
Rehearing Denied May 4, 1956.

James S. Greene, Jr., Jos. K. Beasley, Harlan, for appellant.

Cawood Smith, Harlan, John Young Brown, Lexington, Duff Arnett, Hazard, for appellee.

STANLEY, Commissioner.

This is an action by the appellee, Carbon Glow Coal Company, a corporation, to recover $4,084.33 of the appellant, Harlan

National Bank, alleged to have been wrongfully charged to the plaintiff's bank account through failure to stop payment of seven checks, aggregating that sum, after receiving specific directions not to pay same. Judgment was rendered for $2,552.83 representing three of the checks and was denied on the others. The case is here on an appeal and cross-appeal. The principal question on the direct appeal is the authority of the individual who gave the stop order to do so. The question on the cross-appeal is one of an interpretation of the order.

Walter D. Skidmore had been the executive vice president and manager of the coal company and the owner or title holder for his family of 12½% of its capital stock. Dr. E. M. Howard and Dr. E. J. Johnson and their families owned the rest of it. It appears the company was losing money in its operations and disagreements had arisen between Skidmore and the other men. On October 27, 1953, the Howard-Johnson group orally sold their stock to Skidmore, but the transaction could not be closed that day. It was agreed to meet on October 29 to consummate the deal. In the afternoon of that day payment was made and the certificates of stock delivered. During the morning of that day Skidmore went in person to the company's depository, the Harlan National Bank, and advised the president of the bank that he had bought all the stock of the coal company and instructed the bank to stop payment of all checks "as of the 27th of October." The bank thereupon placed the following notation upon the ledger sheet of the coal company's account: "Do not honor any checks issued by Carbon Glow Coal Company unless signed by W. D. Skidmore, dated from 10–27–53. Instructed on above 10–29–53."

Afterward, through oversight of the stop-order, the bank paid the seven checks involved in this suit. The three checks aggregating the amount of the judgment were dated October 29, 1953. Of those checks for which judgment was denied, one for $1,276.05 was dated October 27 and the three others, aggregating $287.30, were dated October 21st or 26th. The company's office was in Harlan where Howard lived.

Skidmore had charge of the mining operations in Letcher County, about 70 miles away. Skidmore had never signed any checks of the company drawn on the Harlan Bank but had signed checks drawn on other banks. The Harlan checks had been signed by Dr. Howard or E. M. Howard, Jr., as treasurer and countersigned by Dixon, the bookkeeper. During the negotiations for the purchase and sale of the stock, Skidmore was advised of the status of the company's bank account. He had instructed the bank not to honor checks after the 27th in order to prevent encroachment or dissipation of the deposits. It appears that the bank paid 31 checks notwithstanding the stop order, but the coal company, through Skidmore, has sought to recover on seven checks which he deemed to have been wrongfully drawn for the personal benefit of Howard and Johnson after he had bought their stock and for all practical purposes had acquired all the assets of the company.

■ The appellant submits that the real controversy is between Skidmore and the Howard-Johnson group as it really rests on Skidmore's charge of fraud and deceit in the transaction between them. It does seem that the bank has been unfortunately ensnared in such a conflict. Nevertheless, the appellant recognizes that a check drawn on a depositor's account is subject to revocation or countermand by the drawer at any time before it has been accepted or paid or certified by the drawee bank and that a bank pays such a check at its peril where a positive and unqualified stop-payment order or instruction has theretofore been received. Second National Bank of Paintsville v. Meek Appliance Co., Ky., 244 S.W.2d 769.

■ The appellant challenges the stop-payment order as having been made by Skidmore individually and not with authority of the drawer of the checks, i. e., the corporation, in whom rested the power and right of revocation and countermand. As stated Skidmore had informed the bank that he had bought the stock of the corporation. He was already an executive officer and a

director of the company. On this occasion he assumed to act as its authorized agent for the purpose of stopping payment of its checks. It is true, as appellant points out, that our statute KRS 274.010 prescribes that title to corporate shares of stock can be transferred only by delivery of an endorsed certificate or by delivery of the certificate accompanied by a written assignment, and there had not at that time been any such transfer. But KRS 271.165 gives the purchaser of stock the right to receive a certificate as authentic evidence or a symbol of his ownership and interest in the corporation, and a failure to issue the certificate cannot affect the stockholder's right as between himself and the corporation where its officers have knowledge of the facts. Swaim v. Martin, 302 Ky. 381, 194 S.W.2d 855. We think if the date of October 27 be significant, that was when the actual sale and purchase of the stock was made, and for all practical purposes Skidmore became the owner of all of it or nearly all of it. At least he became the equitable owner, Lam v. White, 204 Ky. 557, 264 S.W. 1113, although legal title remained in the sellers until a few hours after he had instructed the bank not to pay the checks. When they were cleared by the bank Skidmore had become the president of the corporation and was recognized as such by the bank. Underlying all this is the fact that the bank, with full knowledge of the facts, did definitely accept Skidmore's stop order and agree to conform. We concur in the conclusion of the circuit court that the bank was thereafter estopped to deny Skidmore's authority to issue the order and from taking a different position when it got into trouble by ignoring the order. 2 C.J.S., Agency, § 29(3).

The cross-appeal by the coal company from so much of the judgment as refused recovery on the four checks dated October 21, 26 and 27 rests on the contention that the stop order of the 29th of October referred to the time these checks were presented for payment, which was after that date, regardless of the dates of the checks.

Skidmore testified he intended that no check presented after his conversation with the president of the bank should be paid, but his evidence was that he had used the term "as of the 27th" in reference to the countermand. The language of the notation made on the bank's records, quoted above, is "dated from" the 27th.

The time a stop order is given may be of the utmost importance in some cases, but such a direction is effective according to its terms. Always the notice must be positive and unqualified, and the check or checks must be described with reasonable accuracy to enable identification. Kentucky-Farmers Bank v. Staton, 314 Ky. 313, 235 S.W.2d 767; Sec. 3704, Zollmann, Banks and Banking; Sec. 194, Volume 5A, Michie, Banks and Banking; 7 Am.Jur., Banks, Sec. 605; 9 C.J.S., Banks and Banking, § 344. In the instant case the direction was not to pay any check "after the 27th" or "as of the 27th" of October. The only doubt about the description relates to the one check which was dated October 27. In some cases it may be fair and just to resolve a doubt in favor of the drawer of a check, but in this case, when all the circumstances are considered, the resolution should be the other way. We think the trial court properly considered the direction not to have included that check or the others dated the 21st and 26th.

The judgment is affirmed on the direct and cross-appeals.

HOGG, J., not sitting.